**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Arthur John KLOOCK, III,**
**Defendant-Appellant.**

No. 80–5459.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 4, 1981.

Joel Kaplan, Miami, Fla. (Court appointed), for defendant-appellant.

Linda Collins-Hertz, Sonia O'Donnell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before RIVES, KRAVITCH and ANDERSON, Circuit Judges.

RIVES, Circuit Judge:

Arthur J. Kloock, III, appeals his conviction on one count of importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a) and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Finding no merit to his contentions, we affirm on both counts.

On October 30, 1979, Kloock arrived at Miami International Airport on a flight from Lima, Peru. He presented himself to Customs Inspector Anita Levine and opened his baggage. On top of the clothing in the suitcase was a yellow bath mat. Inspector Levine's suspicions were aroused by the appearance of the bath mat which, in her words, was "real hard and sticky, and you could see it had been soaked with something."[1] Another customs inspector performed a field test on the bath mat, which indicated the presence of cocaine. Subsequent laboratory tests revealed that the bath mat was impregnated with approximately 224 grams of cocaine of 88% purity having a value of between $16,000 and $20,-000. After the field test Kloock was taken into a back room and searched. In addition to his passport, Michigan driver's license, and round trip air ticket from Miami to Lima, Peru, Kloock was carrying a Michigan driver's license bearing his picture and the name of "Brian William Leyland" and an air ticket from Miami to Atlanta to Detroit to Miami in the name of "George Wilson."

Kloock was subsequently indicted for importation of cocaine and possession of cocaine with intent to distribute. A jury convicted him on both counts, and he was sentenced to serve three years imprisonment plus a three year special parole term on each count, the sentences to run concurrent-

---

1. Transcript at 13.

ly. This appeal followed. Kloock challenges the admissibility of the Michigan driver's license in the name of "Brian William Leyland" and the sufficiency of the evidence to support his conviction.

■ Kloock contends that the district court committed error in allowing the government to introduce the false Michigan driver's license that was found in his possession at the time of his arrest. He asserts that possession of a false driver's license is a felony under Michigan law [2] and that the license should have been excluded under Fed.R.Evid. 404(b) as evidence of an extrinsic offense offered to prove that he was a person of bad character. Although Kloock's trial counsel timely objected to the admission of the driver's license the objection did not adequately raise the issue of compliance with Rule 404(b).[3] Our role is thus limited to determining whether the admission of the driver's license was plain error.[4] We hold that it was not.

■ Kloock's contention, raised for the first time on appeal, is that the evidence of the false driver's license did not meet the standard of relevance established in this circuit for the admissibility of evidence of an extrinsic offense in order to show intent. *See U. S. v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc) *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). We have previously indicated that evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an "extrinsic" offense within the meaning of Rule 404(b). *See U. S. v. Killian*, 639 F.2d 206, 211 (5th

2. Our research indicates that possession of a false driver's license is not a felony in Michigan, but is simply "unlawful," punishable by suspension of the offender's (valid) driver's license. *See* Mich.Comp.Laws Ann. § 257.324 (West 1977). This does not affect our analysis, however, because the same principles apply "whenever the extrinsic activity reflects adversely on the character of the defendant, regardless whether that activity might give rise to criminal liability." *U. S. v. Beechum*, 582 F.2d 898, 903 n.1 (5th Cir. 1978) (en banc).

3. To the extent the ground for counsel's objection was stated at trial, it was limited to Fed.R. Evid. 403. After the government showed the driver's license to one of its witnesses, the following colloquy took place:

[Defense Counsel]: I would like to get a proffer from the Government. They are trying to admit these Exhibits. I believe that they are prejudicial.
The Court: What are they, first of all?
[Prosecutor]: The passport, his identification he had on him and the airplane ticket folders.
[The Court]: That is all?
[Prosecutor]: Yes.
[Defense Counsel]: The identification that they are trying to admit is an alias. He has not been charged under any alias, and I believe the only reason that would be coming in would be to prejudice him, and it would not go to the probative value for this particular case.
The Court: Is there anything about the alias that calls ___
[Prosecutor]: Your Honor, he was traveling under the alias.´
The Court: This is what was physically taken from him?

[Prosecutor]: Yes. Taken from him and, of course, it is prejudicial, but it is no reason to keep it out. It was seized from him that day.
The Court: I assume what you have requested is your request to me to invoke the provisions of Rule 403, because it would appear it is relevant; however, from what has been stated so far, unless I hear something later, the probative value is not substantially outweighed by the danger of unfair prejudice as to be inadmissible. I will admit it.
Transcript at 16–17.
Defense counsel made no attempt to renew his objection on the basis of Rule 404(b). Moreover, in light of his closing argument, it seems unlikely that he intended to object on the basis of Rule 404(b):
Now, we come back to the driver's licenses. Ladies and gentlemen, *that is not a crime.* Anyone can use an alias, *no crime in that.*
Transcript at 94 (emphasis added).

4. Fed.R.Evid. 103 provides:
(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; . . .
. . . .
(d) Plain error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

Cir. 1981); *U. S. v. Aleman,* 592 F.2d 881, 885 (5th Cir. 1979).

Even assuming the applicability of *Beechum,* however, there was no error. Under *Beechum,* extrinsic offense evidence is admissible if it is "relevant to an issue other than the defendant's character" and if it possesses "probative value that is not substantially outweighed by its undue prejudice." 582 F.2d at 911. The false driver's license was relevant "[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place. This is often characterized as proving part of the 'same transaction' or the 'res gestae.'" McCormick on Evidence § 190, at 448 (Cleary ed. 1972) (footnote omitted); *Killian; Aleman; U. S. v. Wilson,* 578 F.2d 67 (5th Cir. 1978). *See also Beechum* at 911–12 n.15.[5] Because the driver's license was relevant to an issue other than character, it was admissible unless its probative value was substantially outweighed by the danger of unfair prejudice.

The license was highly probative on the issue of intent. From Kloock's possession of the false driver's license the jury could infer that he was attempting to conceal his identity.[6] One who carries false identification is often likely to have some illicit motive for doing so, and from this the jury could infer that Kloock's possession of cocaine was knowing, as the desire to avoid capture while in knowing possession of cocaine may have provided the motive for his possession of the false license. In view of the unusual method by which the cocaine was concealed, the government had a very real need for any evidence tending to show

that Kloock knew he was not carrying an innocent bath mat.

The danger of unfair prejudice from admission of the driver's license, by contrast, was slight. Possession of a false driver's license is not the kind of offense that is so likely to arouse the jury's passions against the defendant that they are likely to convict him of importation of and possession with intent to distribute cocaine on the basis of the false license alone. In *Killian,* a prosecution for conspiracy to possess cocaine and for substantive cocaine violations, we upheld the admission of cocaine and pistols found in the homes of some of the conspirators, despite the obvious potential for prejudice. Similarly, in *Aleman* we upheld evidence of a sale of cocaine in a prosecution for conspiracy to possess with intent to distribute heroin, and in *Wilson,* evidence of an uncharged sale of Dilaudid (hydromorphone hydrochloride) in a prosecution for sale of Dilaudid. In each of these cases the danger of unfair prejudice was considerably greater than it was in the instant case. The district court did not abuse its discretion in permitting the government to introduce the false driver's license.

█ Kloock also challenges the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence to support a jury verdict, our task is to determine whether, taking the facts and the inferences therefrom in the light most favorable to the government, a reasonable jury could conclude that the evidence excluded every reasonable hypothesis but that

---

**5.** The holding of *Beechum* is that where the government seeks to introduce evidence of a crime unrelated in time and place to the charged offense in order to show the defendant's intent to commit the crime charged, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." 582 F.2d at 911. The extrinsic offense evidence is admissible for this purpose if the criminal intent elements of the extrinsic and charged offenses are substantially similar. However, "[i]n other contexts different standards apply because the inference to be drawn from the extrinsic of-

fense is not based upon the reasoning [in *Beechum*]," *id.* at n.15, and similarity is not a requisite for the admissibility of offenses arising out of the same transaction as the charged offense. *Id.* at 912 n.15.

**6.** Although Kloock was obviously not attempting to conceal his identity when he presented a passport in his true name to the customs officer, the jury could infer that had he been asked for identification in a circumstance in which a driver's license (as opposed to a passport) would be sufficient he would have presented the false license.

of guilt. *Glasser v. U. S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *U. S. v. Vincent*, 648 F.2d 1046 (5th Cir. 1981); *U. S. v. Suarez*, 608 F.2d 584 (5th Cir. 1979). The issue is not whether this court believes that the evidence is inconsistent with any reasonable hypothesis of innocence, but whether a reasonable jury could so conclude. Kloock contends that there was insufficient evidence that he knew of the presence of the cocaine in the bath mat. Applying the *Glasser* standard, we must reject this contention.

The evidence unequivocally established that when Kloock arrived from Peru he had in his possession a bath mat impregnated with a substantial quantity of cocaine, an air ticket in a false name, and a driver's license in a second false name. Kloock does not contend that he did not know the bath mat was in his suitcase, but only that there was insufficient evidence that he knew that the bath mat was impregnated with cocaine. All of the witnesses who described the bath mat testified that it was hard and sticky or tacky. The chemist who performed the laboratory test for cocaine testified that "[i]f you touch it, the humidity of your hands will kind of get some powder[ ] [t]hat crumbles out of it and you will notice your hands kind of get sticky with it." [7] The jury could have found beyond a reasonable doubt that the condition of the bath mat was sufficiently unusual that an innocent person would not have carried it on board an international flight bound for the United States without further inquiry and that possession by Kloock was, therefore, no fluke.

Kloock seeks to distinguish the facts of his case from those of *U. S. v. Palmere*, 578 F.2d 105 (5th Cir. 1978) *cert. denied* 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979); *U. S. v. Restrepo-Granda*, 575 F.2d 524 (5th Cir.) *cert. denied* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978); *U. S. v. Catano*, 553 F.2d 497 (5th Cir.) *cert. denied* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977); and *U. S. v. Squella-Avendano*, 478 F.2d 433 (5th Cir. 1973). Although each of these cases is in some degree factually dissimilar from the instant case, we find Kloock's purported distinctions unpersuasive. Indeed, the evidence against Kloock was at least arguably stronger than that in *Palmere*, in which the only evidence that the defendant knew he was carrying cocaine was the fact that it "produced a noticeable bulge in the bag [that defendant testified had been packed for him by his traveling companion] which defendant should have noticed." 578 F.2d at 107.

Kloock's final contention is that there was insufficient evidence that he possessed the cocaine with intent to distribute it. As we recently said in *U. S. v. Richards*, 638 F.2d 765, 769 (5th Cir. 1981):

> [T]he possession of a quantity of narcotics so large that it could not be used by the possessor alone justifies the conclusion that he had an inventory for distribution rather than personal consumption. *See United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980); *United States v. Soto*, 591 F.2d 1091, 1103 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Raffo*, 587 F.2d 199, 201 (5th Cir. 1979); *United States v. Johnson*, 469 F.2d 973, 977 (5th Cir. 1972). The jury was warranted in concluding that one who possessed 12,000 doses of heroin did not intend to use the supply merely for personal euphoria.

*See also U. S. v. DeLeon*, 641 F.2d 330, 335 (5th Cir. 1981); *U. S. v. Goldstein*, 635 F.2d 356, 362 (5th Cir. 1981). There was testimony that the bath mat contained 22,400 dosage units of cocaine. The jury could properly conclude that Kloock did not possess this much cocaine solely for personal use.

The convictions are AFFIRMED.

---

7. Transcript at 59.