UNITED STATES of America,
Plaintiff-Appellee,

v.

Raphael L. GONZALEZ,
Defendant-Appellant.

Nos. 81–5004, 81–5528.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 16, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**490**

Neal R. Lewis, Laurel D. White, Miami, Fla., for defendant-appellant.

Kenneth W. Lipman, Sonia Escobio O'Donnell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, Circuit Judge, SMITH,[**] Judge, and HENDERSON, Circuit Judge.

HENDERSON, Circuit Judge:

In these consolidated appeals, Raphael Gonzalez challenges his conviction in the United States District Court for the Southern District of Florida. We affirm the decision of the district court and deny relief on both appeals.

On July 16, 1980, the appellant was named as a defendant in four counts of a six-count indictment. Count I charges Gonzalez with conspiracy to "possess with intent to distribute and to distribute quantities of ... methaquaalone tablets" on or about June 16, 1980 to on or about June 20, 1980, in violation of 21 U.S.C. § 846; Count II accuses him of possession "with intent to distribute ... approximately 5,000 methaquaalone tablets" on June 17, 1980, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count III alleges that on June 17, 1980, he distributed "approximately 5,000 methaquaalone tablets," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; in Count V complaint is made that Gonzalez used a "communication facility" in the commission of a felony, in violation of 21 U.S.C. § 843(b). Pretrial discovery was conducted pursuant to a standing discovery order issued by the trial court. After a jury trial the appellant was found guilty on all four counts. He received concurrent sentences of three years in prison on each count, with a special parole term of two years on counts two and three. He subsequently filed a timely appeal from the convictions and sentence to this court. This first appeal is styled case number 81–5004.

After submitting the notice of appeal in case number 81–5004, Gonzalez filed with this court a motion to remand the case for a hearing and for a new trial based on newly discovered evidence. A panel of this court denied the motion without prejudice, directing the appellant to move for a preliminary determination on the motion for a new trial in the trial court. Following this direction, Gonzalez filed a motion for a new trial in the district court, which held that if the case was remanded, it would deny the motion. Gonzalez then appealed this determination of the district court. By an order of this court, the second appeal, case number 81–5528, was consolidated with the first appeal, number 81–5004.

The complexity of the facts warrant a detailed examination. According to the government's witnesses, Drug Enforcement Administration (DEA) Agent Vincent Mazzilli and confidential informant, Ramon

[**] Judge of the U. S. Court of Claims, sitting by designation.

Herrera, they, together with the appellant and co-conspirators Javier Morejon and Jorge Leon, met on the afternoon of June 16, 1980, at a Howard Johnson's restaurant in Miami, Florida. This meeting was arranged by Herrera to negotiate a sale of methaquaalone (quaaludes) between the indicted co-conspirators and Mazzilli, an undercover "buyer." At this time there was a discussion relating to the sale of 800,000 quaalude tablets. The government witnesses testified that Gonzalez represented that he could presently and potentially supply large quantities of high quality quaaludes at a certain price per tablet. Gonzalez left the meeting before its conclusion, ostensibly to get the first batch of quaaludes for delivery to Mazzilli. He never returned to the restaurant because he had become suspicious of Mazzilli. Mazzilli then went home for the evening and the rest of the group departed the premises. All of the group, except Mazzilli, reconvened later that night at the apartment of Leon's girl friend. At this later meeting, it was agreed that the drugs, 250,000 quaalude tablets, would be delivered the next morning at a shopping mall. Leon agreed to transport the drugs in a car, at which point Leon would "switch cars" with Herrera who would hand over the money for the drugs. The next morning, June 17, 1980, Leon arrived at the mall in Gonzalez' car which contained 5,000 methaquaalone tablets. Leon told Herrera that these were pills from a previous deal which had gone "sour" and that he could take these pills to Mazzilli. They exchanged cars and Herrera took the appellant's automobile to DEA headquarters where the tablets were removed from the vehicle. Herrera then returned to the mall but without the money for the pills.

Over the next few days, there were numerous phone conversations between Herrera, Mazzilli, and Gonzalez concerning payment for the 5,000 pills which had already been delivered and plans for future quaalude deliveries. Several of the conversations with Gonzalez were taped and admitted into evidence at the trial. On June 20, 1980, Gonzalez informed Herrera that another quantity of pills would be delivered to the shopping mall by a man named "Ronnie." Herrera met Ronnie at the mall, switched cars and drove the vehicle containing the pills to DEA headquarters. Upon examination, the DEA found 40,000 white tablets in the car which were analyzed as diazapam (valium), not methaquaalone. These pills and testimony about this transaction were admitted into evidence at the trial under Count One, the conspiracy count. Gonzalez was arrested on June 20, 1980.

At the trial, the appellant's testimony varied greatly from the government's version. Gonzalez stated that he attended the meeting at the Howard Johnson's restaurant for the sole purpose of conferring with Leon about his personal problems. Gonzalez claimed that he did not participate in the discussion when it turned to drugs, but was "merely present." He also testified that his appearance at the apartment of Leon's girl friend was prompted by personal concern for Leon and that he left once the subject of drugs entered the conversation. According to Gonzalez, he loaned his vehicle to Leon but had no prior knowledge of the delivery of the 5,000 quaaludes to Mazzilli. By his account, he and his family had been threatened by Mazzilli and Herrera and, because of this fear, he had talked about drugs in various taped conversations with Mazzilli and Herrera. In light of the guilty verdict, it seems obvious that the jury resolved the factual questions in favor of the government.

In case number 81-5004, the appellant raises three grounds of error.

Gonzalez first claims that the district court erred in admitting into evidence, under Count One, the 40,000 diazapam tablets and testimony concerning this transaction. The trial judge excluded the chemist's report on the tablets, yet permitted the pills to be admitted into evidence. There was testimony before the jury that although these tablets were not methaquaalone, the diazapam packages bore markings similar to that used for quaaludes. The jury was never apprised of the exact chemical content of the drugs. Gonzalez alleges that,

since the indictment specifically refers to a methaquaalone conspiracy, the introduction of the diazapam pills was either a prohibited amendment of the indictment or a prejudicial variance and, thus, requires reversal. Although a constructive amendment of the indictment and a variance between the allegations and proof are analogous, they are nevertheless distinguishable. *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *United States v. Ylda*, 653 F.2d 912, 913–14 (5th Cir. 1981). *See also* 8 Moore's Federal Practice ¶ 7.05[1], [3] (2d ed. 1981).

■ To be tried solely on the allegations returned by the grand jury in the indictment is a substantial constitutional right of a criminal defendant facing felony charges. *Stirone*, 361 U.S. at 215–218, 80 S.Ct. at 272–273; U.S.Const. amend. V. After an indictment is returned, the "charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215–16, 80 S.Ct. at 272. However, there can be a constructive amendment to the indictment when the evidence presented at trial *and* the instructions given to the jury "so modif[y] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *Ylda*, 653 F.2d at 914. *See Stirone*, 361 U.S. at 217, 219, 80 S.Ct. at 273, 274; *United States v. Bizzard*, 615 F.2d 1080 (5th Cir. 1980); *United States v. Salinas*, 601 F.2d 1279, 1282 (5th Cir. 1979), *amd.* 610 F.2d 250 (5th Cir. 1980). Since a constructive amendment violates the defendant's right to be tried only on charges presented in the indictment, such error is fatal and requires reversal. *Stirone*, 361 U.S. at 219, 80 S.Ct. at 274; *Ylda*, 653 F.2d at 913; *United States v. Carroll*, 582 F.2d 942 (5th Cir. 1978). *See also* Moore's Federal Practice, ¶ 7.05[1] (2d ed. 1981).

■ In this case, there was no amendment because it cannot be said that the appellant was convicted of an offense other than that contained in the indictment. Count One specified a methaquaalone conspiracy. Five thousand quaaludes, as well as testimony and tapes of Gonzalez' statements concerning the sale of methaquaalone were introduced as evidence to support Count One. While drugs other than quaaludes were also admitted, the judge's instructions to the jury clearly restricted the charge to a conspiracy involving methaquaalone only. We see no possibility that the jury mistakenly convicted Gonzalez of anything other than a methaquaalone conspiracy.

■■ Appellant, however, is correct in asserting that a variance existed between the allegations and the proof, although this variance does not require reversal. The 40,000 tablets were diazapam, not methaquaalone, and therefore conflicted with the allegations of Count One, which were clearly limited to a methaquaalone conspiracy. In such circumstances, though, the inquiry focuses on whether the difference between the allegations and the proof affects a substantial right of the accused. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Bottom*, 638 F.2d 781 (5th Cir. 1981); *United States v. Phillips*, 625 F.2d 543 (5th Cir. 1980). *Accord United States v. Canales*, 596 F.2d 664 (5th Cir. 1979). This rule serves a twofold purpose: (1) to ensure that the accused is informed of the charges against him so that he can prepare his defense in the absence of surprise and (2) to protect the defendant from a later prosecution for the same offense. *United States v. Berger*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Phillips*, 625 F.2d 543 (5th Cir. 1980). If a variance defeats either of these purposes, it is prejudicial to the accused's substantial rights and invalidates the conviction. *See United States v. Freeman*, 514 F.2d 1184, 1189 (10th Cir. 1975) (variance not fatal unless defendant could not have anticipated from the indictment the nature of the evidence adduced at trial).

In the instant case, even though the proof of the diazapam tablets differed with the allegations of the indictment, the appellant's substantial rights were not prejudiced. He was clearly aware of the charges

against him. Count One specified the inclusive dates of the conspiracy and Gonzalez should have been prepared to defend against the events which transpired on those dates. The diazapam transaction occurred on June 20, 1980, the last inclusive date in the charged conspiracy. There was no surprise because, prior to trial, defense counsel knew about the second attempted sale involving the 40,000 pills and that the drugs were in the hands of the prosecutor. Also, as stated earlier, there was conclusive evidence at the trial which was not in conflict with the indictment and which clearly supported the jury's verdict as to Count One.[1] Hence, Gonzalez was convicted of the crime charged and runs no risk of a later prosecution for this same offense. The variance, at most, was harmless error which does not justify reversal.

■ The third suggested error in the admission of the diazapam pills is predicated on Federal Rule of Evidence 404(b). Rule 404(b) prohibits evidence of a defendant's extrinsic acts to prove bad character or a propensity to commit crime.[2] Gonzalez did not make this objection at the trial, nor was it raised in his brief in this court. It was mentioned in the government's brief and by the appellant in his reply brief. For this reason, we consider the issue. Since the precise objection was not made before the district court, our standard of review is that of plain error. *United States v. Kloock*, 652 F.2d 492, 494 (5th Cir. 1981).

■ The government contends that the evidence of the diazapam transaction is excepted from the proscription of Rule 404(b) because it "formed an integral and natural part of the account of the circumstances regarding the charged offense." Brief for government at 24. This circuit has, on many occasions, acknowledged this exception to the rule against admission of other acts. *See, e. g., United States v. Kloock*, 652 F.2d at 494 ("evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of Rule 404(b)"); *United States v. Killian*, 639 F.2d 206, 211 (5th Cir. 1981) (evidence was not extrinsic because it was inextricably intertwined with the evidence regarding the main transaction); *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979) ("the policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions"); *United States v. Wilson*, 578 F.2d 67, 72–73 (5th Cir. 1978) (an exception to the general rule of inadmissibility exists when the evidence of other criminal activity is introduced "in order to complete the sto-

---

1. Although the introduction of the 40,000 diazapam tablets did not constitute a prejudicial variance, we feel constrained to comment on the impropriety of using such evidence by the prosecution. In light of the other evidence adduced at the trial which implicated the appellant in the methaquaalone conspiracy, the introduction of the 40,000 diazapam pills was of little significance to the prosecution. As this court said in *U.S. v. Wilson*, 578 F.2d 67, 71–72 (5th Cir. 1978),

   [i]t does not serve society's interests to attempt to admit all evidence damning to the defendant with the idea that the appellate court will either approve the conviction or reverse and indicate which evidence to omit at trial. That is a wasteful . . . abdication of the prosecutor's responsibility . . . . Ironically, by being overzealous the prosecutor may achieve the immediate goal of a guilty verdict, yet, in the process, the conviction is rendered vulnerable to eventual appellate reversal.

2. F.R.Evid. 404(b) reads:

   (b) *other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

   In the trial, the jury was never told that the 40,000 pills were diazapam, a controlled substance. They were informed that the pills were not quaaludes, but that they were marked as quaaludes are usually labeled. Consequently, the evidence did not clearly show that the appellant committed another crime. Even so, the attempted sale of these tablets could properly be considered a wrongful "act" within the meaning of Rule 404(b).

ry of the crime on trial"); *United States v. Bloom*, 538 F.2d 704, 709 (5th Cir. 1976), *cert. denied, Bloom v. United States*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977), (the evidence was not extrinsic because it merely served to complete the agents' accounts of their dealings with the defendant).

The deal involving the diazapam occurred within the dates of the conspiracy as alleged in the indictment. The testimony of the government's witnesses disclosed a series of events spanning five days all of which comprised only one criminal occurrence. Evidence of this final transaction completed the government witnesses' account of the entire incident. This circumstance then did not amount to an "other" bad act, and admission of the evidence was not prohibited by Rule 404(b).

■ Moreover, evidence of other acts is admissible if it is relevant to an issue other than the defendant's character, such as intent, plan, or preparation, and if its probative value is not outweighed by its prejudice. *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied, Beechum v. United States*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The evidence of the attempted diazapam sale is relevant to the appellant's intent and preparation to complete the methaquaalone transaction which had been negotiated previously. *See United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir. 1981); *United States v. Bloom*, 538 F.2d at 709. We further conclude that the probative value of the diazapam evidence was not outweighed by its prejudicial effect. This transaction occurred in close proximity to the actual methaquaalone sale and on dates specified in the indictment. The attempted sale of these drugs which in fact were not methaquaalone but marked as such, bore a strik-

ing resemblance to an actual sale of methaquaalone. Of greater significance is the other substantial evidence of Gonzalez' criminal involvement sustaining the guilty verdict. In the face of this other decisive evidence, we cannot say that the disclosure of the diazapam deal prejudiced the defendant. *See United States v. Guerrero*, 650 F.2d 'at 733–34.

■ The further contention is made that even if the diazapam evidence was otherwise admissible, the failure of the government to disclose that it would be introduced at trial constitutes error. Prior to the trial, the appellant, pursuant to the standing discovery order and Federal Rule of Criminal Procedure 16(a)(1)(C), requested from the government all evidence to be used at trial. *See United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978). The government responded with two lists, neither of which included the 40,000 diazapam tablets.[3]

Assuming that this failure to disclose was the government's error, it is not cause to reverse unless prejudicial to the substantial rights of the accused. *United States v. Ible*, 630 F.2d 389 (5th Cir. 1980); *United States v. Arcentales*, 532 F.2d 1046, 1050 (5th Cir. 1976). If the defendant was unduly surprised and did not have an adequate opportunity to prepare a defense, *United States v. Bockius*, 564 F.2d 1193 (5th Cir. 1977), or if the mistake had substantial influence on the jury, *United States v. Ible*, 630 F.2d at 397, then the conviction cannot stand.

As noted before, the diazapam transaction occurred on a date clearly included in the indictment. The appellant's attorney knew, prior to trial, of this second event and it was at least mentioned in one of the discovery lists submitted by the government.[4] The defendant was not unduly sur-

---

**3.** The appellant also claims that defense counsel received an oral confirmation from the initial prosecutor working on the case that he would not rely on this evidence. Another prosecutor assigned to the trial disputes this assertion. However, the trial court refused to hold a hearing to resolve the controversy. Record, Vol. III at 26–7, 30. The discovery lists sub-

mitted by the government were appended to the appellant's brief to this court.

**4.** The discovery letter of August 26, 1980 stated: "an additional report pertaining to the June 20, 1980 transaction will be provided when it becomes available." This is a reference to the attempted sale of diazapam on June 20, 1980.

prised to such an extent that it impaired his ability to prepare a defense. As we have stated, "[t]he discovery process does not obviate the need for thorough trial preparation." *United States v. Arcentales*, 532 F.2d at 1050. Also, since there was other substantial evidence to support the jury's verdict, it cannot be said that the jury prejudicially relied on the evidence of the diazapam transaction to find the appellant guilty of the methaquaalone conspiracy.

■ Gonzalez also maintains that the evidence was insufficient to support the verdict. A guilty verdict must be upheld if, "taking the facts and inferences [from the evidence] in the light most favorable to the government, a reasonable jury could conclude that the evidence excluded every reasonable hypothesis but that of guilt." *United States v. Kloock*, 652 F.2d at 495–96, quoting *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The jury heard the testimony of the DEA agent and the informant which implicated the appellant, as well as the similar sworn statements of a co-conspirator. Tapes of appellant discussing arrangements for the methaquaalone sale were played at the trial. The evidence meets the sufficiency test.

■ The final assignment of error in Gonzalez' direct appeal from his conviction deals with his complaint that the district judge was furnished unreliable information at the sentencing hearing, thereby violating appellant's due process rights. The sentencing procedure is left to the broad discretion of the trial judge, *United States v. Espinoza*, 481 F.2d 553 (5th Cir. 1973), and this discretion will not be disturbed absent gross abuse. *United States v. Hodges*, 556 F.2d 366, 369 (5th Cir. 1977), *cert. denied*, *Hodges v. United States*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978). The sentencing judge may consider evidence which may not be admissible at trial, *United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977), yet "rudimentary notions of fairness" must be observed at the sentencing process. *Espinoza*, 481 F.2d at 558. The requirements of due process and fundamental fairness require that the defendant be given an opportunity to rebut the factual assumptions relied on by the judge. *Hodges*, 556 F.2d at 369; *Espinoza*, 481 F.2d at 556, 558.

■ The attorney for the appellant requested and received a two-week continuance of the sentencing hearing in order to prepare a response to the government's evidence. At the continued proceeding two weeks later, defense counsel had ample opportunity to rebut any of the inferences or evidence previously presented by the government. Thus, the sentencing proceeding complied with the requirements of due process.

For the foregoing reasons, the conviction and sentence imposed by the trial court in case number 81–5004 are affirmed.

■ In his second appeal, case number 81–5528, the appellant insists that the district court erred in denying his motion for a new trial on the basis of newly discovered evidence without first conducting an evidentiary hearing. He seeks to introduce the testimony of Carlos Calleja, a federal prisoner, that Jorge Leon, a rebuttal witness for the government at the trial, told Calleja in prison that he had lied at the trial and that Gonzalez was innocent of the offenses for which he was convicted.

In *United States v. Martino*, 648 F.2d 367, 406–07 (5th Cir. 1981), a panel of this court stated

[t]he criteria for obtaining a new trial on the basis of newly discovered evidence are:

1. the evidence must be discovered following the trial;

2. facts must be alleged from which the court may infer diligence on the part of the movant to discover the new evidence;

3. the evidence must not be merely cumulative or impeaching;

4. the evidence must be material; and

5. the evidence must be such that a new trial would probably produce a new result.

*Accord, United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980), *cert. denied, Williams v. United States*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980). During the trial, Gonzalez' lawyer called as a witness an employee of his law firm who testified that Leon had told her that Gonzalez had no knowledge of the quaalude dealings. As a result of this testimony, the issue of Leon's veracity was squarely before the jury. This is substantially the same evidence as that claimed to be newly discovered. The appellant does not offer Leon's own testimony—only that of a third person. Consequently, the additional evidence would be merely cumulative, and, in light of the other evidence before the jury at the trial, is not likely to produce a different result. Since the *Martino* test is not met, we affirm the denial of the motion for a new trial.

The judgments of the district court in No. 81–5004 and No. 81–5528 are

AFFIRMED.