**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles IVY, Defendant–Appellant.**

**No. 90–1309.**

United States Court of Appeals,
Fifth Circuit.

March 21, 1991.

As Amended on Denial of Rehearing
April 22, 1991.

Ronald W. Lewis, Oxford, Miss. (court-appointed), for defendant-appellant.

John R. Hailman, Robert H. Norman, Asst. U.S. Attys., Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Charles Ivy appeals his conviction for interstate kidnapping and related weapons charges. He challenges, among other things, the sufficiency of the evidence and the district court's refusal to suppress incriminating statements he made to police officers after his arrest. We affirm.

## I.

Because Ivy challenges the sufficiency of the evidence, we state the facts in some detail and in a light that favors the verdict. In September 1989, Charles Ivy drove from Memphis, Tennessee to Oxford, Mississippi to the mobile home of his estranged wife, Patricia Ivy.[1] Neither Patricia nor her ten-year-old daughter Deanie were in the trailer when he arrived. Patricia was on a date with Alvin King. When Patricia and King returned, Charles shot King in the head as King sat at the wheel of his car. Patricia testified that Charles ordered her out of the car and into the trailer at gun point. Once they were in the trailer he pistol-whipped Patricia rendering her unconscious.

After Patricia regained consciousness, Charles ordered her to drive him to a relative's home. He threatened to shoot her in the back if she tried to escape. They then drove to the home of Charles' relative, David Carruthers. Charles left his car at Patricia's trailer. Without Patricia's knowledge, Charles hid his pistol at the Carruthers'. Charles then drove Patricia back to her trailer so he could obtain the cash she had left there. While there, Patricia picked up her stash of cocaine. The Ivys then left for Memphis. They spent the night in a motel just across the Tennessee state line.

The next morning the two went to the home of Charles' sister Ruthie Johnson, where they stayed for several days. Members of the Johnson family testified that Patricia had many opportunities to escape or seek help during this period, but did not. While at the Johnsons', Patricia and Charles went shopping, to a concert, and to a movie. Patricia testified, however, that Charles ordered her not to tell his family what had happened. She said that he monitored her closely during their stay in the Johnson home.

Charles and Patricia left the Johnsons' and traveled for two days through Arkansas, Missouri, and Illinois. The Ivys returned to the Johnson home briefly, but left again. Charles took Patricia back to the same Memphis motel where they had stayed the night of the shooting. Both went in to register, but Charles left the keys in the ignition. When Charles became distracted, Patricia ran out of the lobby and escaped in the car. She had no money so she returned to the Johnsons' to call her mother. Patricia's mother advised her to contact the police, which Patricia did immediately.

At trial, counsel questioned Patricia about why she had not attempted to escape or seek help earlier. She explained that during her four-year marriage to Charles, he repeatedly abused her physically and mentally. Patricia also testified that she was afraid Charles would kill her daughter if she tried to escape. She said Charles had told her that he knew how to construct and detonate a pipe bomb. The police found an explosive device in Charles' car along with an accurate diagram describing how to make a bomb.

Patricia admitted that she consented to sex during the four-day ordeal because she was afraid to deny Charles. She explained that she did not feel safe asking Charles' family for help because they did not like her and were unable to control Charles anyway.

A grand jury indicted Charles Ivy for interstate kidnapping (Count 1, 18 U.S.C. § 1201(a)(1)), carrying a firearm interstate with the intent to use it in a kidnapping (Count 2, 18 U.S.C. § 924(b)), carrying and using the firearm in the kidnapping (Count

---

1. For clarity, we occasionally refer to the Ivys by their given names. When we refer to "Ivy" without specifying a given name, we mean Defendant Charles Ivy.

3, 18 U.S.C. § 924(c)(1)), and making, possessing, transporting interstate and carrying during the kidnapping an unregistered dynamite bomb (Counts 4–7, 26 U.S.C. § 5861(d), (f), (j), & 18 U.S.C. § 844(h)(2)). The jury convicted Ivy on all counts except Count 2, which charged him with transporting interstate a firearm before the kidnapping. The district court sentenced Ivy to a total of 15 years incarceration.

Ivy raises a number of issues on appeal. He first challenges the sufficiency of the evidence supporting his conviction on each count. He also contests the district court's ruling denying his motion to suppress an oral statement he gave to the police. Finally, he challenges the district court's refusal to exclude evidence of Alvin King's shooting and earlier threats to kill or harm Patricia and her family. We consider each issue in turn.

## II.

### A.

■ Ivy argues first that the district court erred in denying his motion for judgment of acquittal on the interstate kidnapping charge. In making a sufficiency of the evidence inquiry, we consider the evidence in a light most favorable to the verdict and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ Ivy argues that a rational trier of fact could not have found beyond a reasonable doubt that he kidnapped Patricia because the evidence showed that Patricia consented to being taken across the Tennessee state line. *United States v. Chancey*, 715 F.2d 543, 546 (11th Cir.1983) (if interstate transportation is by consent there is no kidnapping). Ivy argues that the following testimony established that Patricia accompanied him voluntarily:

—He and Patricia amicably met and socialized together in the weeks before the alleged abduction.

—Patricia never even attempted to escape or seek help although she had many opportunities.

—Patricia knew that he did not have the gun as they departed for Memphis.

—She consented to sexual intercourse with him.

—During the alleged abduction, Patricia shared drugs with him, went shopping, went to a concert, and went to a drive-in movie.

—Patricia acted normally during their stay at the Johnsons', not like someone being held against her will.

Ivy relies primarily on *United States v. Chancey*. In *Chancey*, the Eleventh Circuit reversed a kidnapping conviction on the ground that no rational jury could have concluded that the alleged victim was transported involuntarily. The court noted that the victim did not take advantage of numerous opportunities to escape or seek help (including a discussion with a police officer), was seen behaving playfully with the defendant, and agreed voluntarily to frequent sexual intercourse with the defendant. *Id.* at 544–45. The victim testified that she was too afraid to seek help, but the court determined that her testimony was inherently incredible. *Id.* at 547.

Ivy's violent behavior at the beginning of the alleged abduction distinguishes this case from *Chancey*. Charles shot King in the head while Patricia watched. Charles then pistol-whipped Patricia rendering her unconscious. These violent acts immediately before Patricia's abduction together with Charles' longstanding abusive behavior toward her gave Patricia good reason to believe Charles' threats to kill her and members of her family.

Ivy's argument, at bottom, rests on a complaint that the jury refused to credit his testimony and the testimony of his family members. According to Charles, the testimony summarized above conclusively established that Patricia willingly accompanied him. Patricia disputed or explained this testimony. This conflict in testimony made the issue ripe for the trier of fact. Our review of the record persuades us that the jury could have easily accepted Patri-

cia's version of the facts and rejected the testimony of Charles and his family members.

### B.

Ivy next challenges his conviction on Count 5 which charged him with carrying an explosive device while committing kidnapping in violation of 18 U.S.C. § 844(h)(2).[2] Ivy argues that the district court erred in two ways: 1) by failing to grant his motion for judgment of acquittal because the evidence was insufficient to establish that he carried the bomb during the kidnapping, and 2) in not instructing the jury that in order to convict they must conclude that he carried the bomb "during and in relation to" the kidnapping. We examine Ivy's sufficiency argument first.

■ During a search of Ivy's car, police found a pipe bomb and instructions for detonating it. In a statement made to the police, Ivy admitted knowing the device was in his car, but denied threatening to use it during the kidnapping. Patricia admitted that Charles' car remained parked at her trailer in Oxford during the kidnapping. She also testified that she did not know that Charles had a bomb in his car. Ivy argues that a reasonable jury could not convict him under § 844(h)(2) because the government did not prove that he used or even mentioned the bomb during the commission of the offense.

■ Before the kidnapping, Ivy had threatened to "blow up" Patricia and Deanie and had demonstrated to Patricia that he could construct and detonate an explosive. A defendant need not brandish, point, or discharge a weapon to "carry" or "use" the weapon. If the weapon was available to facilitate the crime or if it "emboldened" a defendant in his offense, the jury could conclude the defendant "carried" the weapon during the offense. *United States v. Coburn*, 876 F.2d 372 (5th Cir.1989); *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985). When he shot King and beat

Patricia, Charles knew the bomb was in his car that was parked next to Patricia's trailer. If Charles had needed to terrorize Patricia further to "persuade" her to accompany him, the bomb was readily available. Charles knew that Patricia had been frightened previously by his reference to explosives and could be coerced easily if he chose to display the bomb. The evidence was sufficient to support the jury's conclusion that the bomb facilitated the kidnapping and established an offense under § 844.

■ Ivy also argues that the district court should have instructed the jury that to convict under § 844(h)(2) it must conclude that the defendant carried the explosives "during and in relation to" the kidnapping. The court did not include the "in relation to" language in its jury charge. Ivy reasons that the charge did not require the jury to find that the explosive in his car was related to the kidnapping offense. Section 844(h)(2), however, does not include the relation element Ivy urges. Ivy notes that Congress recently added the "in relation to" language to an analogous statute which prohibits carrying a firearm during the commission of another offense, 18 U.S.C. § 924(c)(1). He suggests disingenuously that § 924's relation element should be applied in this case. We are aware of no cases supporting this position and one case that flatly rejects it. *United States v. Rosenberg*, 806 F.2d 1169, 1177 (3d Cir. 1986) (up to Congress, not courts, to add relation element to § 844(h)(2)). We, too, refuse to judicially append the relation element to § 844(h)(2).

### C.

■ Ivy contends next that the district court should have granted his directed verdict motion on the charge of carrying a gun during a kidnapping. Ivy argues that under § 924(c)(1) the government must prove that he was carrying the gun when he and Patricia crossed state lines. He concedes

---

**2.** Section 844(h)(2) states: "Whoever ... carries an explosive during the commission of any felony which may be prosecuted in a court of the United States ... shall ... be sentenced to imprisonment...."

that he found no supporting cases. We find no merit in this argument.

 Ivy argues further that the court's § 924(c)(1) disjunctive instruction, which used carrying a weapon "either during *or* in relation to that kidnapping," should have stated "during *and* in relation to the kidnapping." Ivy does not cite any case law that suggests the trial court's wording was an abuse of discretion. Moreover, given Ivy's extensive and violent use of the weapon, it is difficult to see how he was prejudiced by the instruction given by the court.

## III.

### A.

 Ivy argues next that the district court abused its discretion in refusing to limit the prosecution's reference to the shooting of Alvin King. During the voir dire and throughout the trial, the prosecution referred to Ivy's shooting of King. Ivy repeatedly and unsuccessfully objected to the references. The trial court denied Ivy's motion in limine reasoning that the shooting was an integral part of the case and particularly relevant to the state of mind of both Charles and Patricia. The court overruled later objections related to the King shooting without comment. Ivy argues that the court should have given reasons each time it overruled his objection. Testimony relating to the King shooting, contends Ivy, was either "other crimes" evidence inadmissible under Federal Rule of Evidence 404(b) to show appellant's motive and intent or, alternatively, if admissible under Rule 404(b), was unduly prejudicial under Rule 403.

 The district court did not abuse its discretion in admitting the references to the King shooting. Uncharged offenses committed during a kidnapping or as a motive for a kidnapping are not "extrinsic" but "integral parts" of the offense. *United States v. Kloock*, 652 F.2d 492, 494 (5th Cir.1981). Indeed, an account of the kidnapping without mention of the shooting would have been incomplete. This testimony was necessary to demonstrate Ivy's state of mind and violent nature. It tended

to show that he was capable of carrying out his violent threats against Patricia and her daughter. The evidence also substantiated the government's theory that Patricia was afraid of Charles and that this fear was well founded. The district court did not abuse its discretion in concluding that its probative value outweighed its prejudicial effect. Finally, Ivy's claim that the court was required to repeat its reasons for admitting the evidence each time it ruled on Ivy's objection is without merit. The court explained its ruling once, repetition of its rationale would have been a perfunctory exercise.

### B.

 Ivy argues next that the district court erred in denying his motion to suppress statements he made to authorities after his arrest. Authorities took Ivy into custody in Memphis and promptly advised him of his *Miranda* rights. He did not immediately exercise any of those rights. Later in the recorded interview, the following exchange occurred:

Lieutenant Waller: Who can you get dynamite from?

Ivy: I'll tell you, let me talk to my lawyer before I answer that.

Waller: All right. Let's talk about something else.

Ivy: That might get me killed.

Waller: Let's talk about something else then. I want to show you pictures.

Rather than ending the interview, providing an attorney, or advising Ivy of his *Miranda* rights again, the officer continued to interrogate Ivy. The district court denied Ivy's motion to suppress concluding that Ivy "was not asking for an attorney but was choosing at that time not to talk about a particular area of inquiry until he talked to an attorney."

Ivy argues that *Edwards v. Arizona* required the district court to suppress the incriminating statements he made in this interview. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, the Supreme Court developed the "prophylactic rule" that when a defendant in police custo-

dy requests counsel, he is not subject to further interrogation until counsel has been made available to him, unless he waives his earlier request for counsel. *Id.* at 484–85, 101 S.Ct. at 1884–85. The government relies heavily on *Connecticut v. Barrett.* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). In that case, Defendant Barrett was read his *Miranda* rights, signed an acknowledgement that he understood those rights, but told the police that he would not make a written statement without his lawyer. Barrett did, however, provide the officers with an oral statement admitting his involvement in the crime. The Supreme Court held that notwithstanding the generous interpretation the police were required to give Barrett's request for counsel, Barrett's invocation did not prohibit further discussions with the police: "To conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement. *Id.* at 529–30, 107 S.Ct. at 832–33.

The trial court's interpretation of Ivy's statement was not clearly erroneous. Ivy expressed his unwillingness to answer questions about where he obtained materials to make a bomb, and Lieutenant Waller honored this request by moving to a different subject. The district court did not err in refusing to suppress Ivy's incriminating statements.

## IV.

■ Ivy complains of seventeen instances of prosecutorial misconduct. Ivy argues that the prosecutor: 1) impermissibly vouched for the credibility of witnesses, 2) engaged in unwarranted name-calling, 3) argued facts not in the record, 4) attacked Ivy's exercise of his right to counsel, and 5) made baseless accusations of criminal acts. In *United States v. McPhee,* we reiterated the standard we must use in reviewing claims of prosecutorial misconduct:

> [T]he reviewing court must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants. Perti-

nent factors include: (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt.

731 F.2d 1150, 1152 (5th Cir.1984).

Most of the comments about which Ivy complains are severe and unflattering characterizations, but they are supported by the evidence. *See United States v. Malatesta,* 583 F.2d 748, 759 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 [1979]. Although several of the comments dance close to the limit of permissible argument, none are so prejudicial that they necessitate a new trial. Moreover, Ivy failed to object to most of the comments he now finds so egregious. The district court did not err in denying Ivy's motion for new trial based on prosecutorial misconduct.

AFFIRMED.