UNITED STATES, Appellee,

v.

Michael J. BURNS, Airman Basic,
U.S. Air Force, Appellant.

No. 99–0474.
Crim.App. No. 32841.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 8, 1999.

Decided May 18, 2000.

The Court delivered a Per Curiam opinion. SULLIVAN, J., filed an opinion concurring in part and in the result.

For Appellant: *Major Thomas R. Uiselt* (argued); *Colonel Jeanne M. Rueth* (on brief); *Colonel Theodore J. Fink* and *Lieutenant Colonel Ray T. Blank, Jr.*

For Appellee: *Major Bryan T. Wheeler* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers,* and *Lieutenant Colonel William B. Smith,* USAFR (on brief); *Major J. Robert Cantrall.*

PER CURIAM:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of conspiring to commit rape and committing indecent acts, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 USC §§ 881 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 12 months, and total forfeitures. The convening authority approved the bad-conduct discharge but exercised clemency by reducing the length of confinement to 160 days and the period of forfeitures to 5 months. The Court of Criminal Appeals affirmed the findings and sentence.

On appellant's petition, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING, OVER DEFENSE OBJECTION, A CONDOM FOUND UNDER APPELLANT'S BED.

We hold that the military judge did not err in admitting this evidence.

## STATEMENT OF FACTS

On July 6, 1996, CK, a female airman, attended a party at appellant's apartment.

Appellant had rented the two-room (living room and bedroom) apartment days earlier in anticipation of the arrival of his wife and young daughter. CK testified that she did not know appellant well, as she had never spoken to him before and had seen him only in basic training. Appellant apparently thought of CK on more intimate terms; Airman Crawford, a friend of appellant, testified that appellant had told him he wanted to have sex with CK. CK thought that this party was going to be a friendly gathering, but as the night wore on and the partygoers began drinking more and more alcohol, things went awry.

The partygoers consumed large amounts of beer and liquor, so much, in fact, that one airman named Goldwire vomited and had to be put in the bedroom. There was testimony that the young airmen at the party, including CK, were playing drinking games, bantering back and forth, and dancing for hours. · As the party began to die down, there were only four people left at the apartment: CK, appellant, Goldwire, and another airman named Merritt. CK testified that she felt comfortable with these airmen and was having fun at the party. After several hours of drinking, CK, Merritt, and appellant all fell asleep on the couch in the living room, while Goldwire remained passed out in the bedroom.

When CK awoke, she found herself naked in the bedroom with Goldwire on top of her, his penis penetrating her vagina. She heard other voices in the room and began struggling. She heard Goldwire tell someone to hold her down and suddenly her wrists were pinned above her head. She struggled until Goldwire and whoever was holding her wrists let her go. She raced into the living room, grabbing whatever clothes she could find on her way out of the bedroom. When she got into the living room of this two-room apartment, she saw no one there. After leaving the apartment, she was picked up by two people driving by who noticed something was wrong and took her back to base.

As CK was attempting to leave, Airman Crawford was returning to the apartment to drive the partygoers back to base.[1] He testified that when he went into the apartment, Goldwire was outside trying to prevent CK from leaving, Merritt was cleaning the apartment, and appellant was on the couch in the living room pretending to be asleep.

Appellant's apartment was searched by law enforcement on July 7, 1996. The bed sheets were found in a closet, and an unopened condom was found and photographed at the head of the bed on the floor. Later that same morning, appellant was interviewed by Special Agent (SA) Franklin. Appellant gave a sworn statement in which he admitted that while CK was asleep on the couch, he and Merritt had undressed her and molested her: "When we woke up me (sic) and Merritt got the idea to take off her pants.... The only thing me and Merritt did was take off her pants and underwear and play with her breasts." The statement also makes it clear that appellant was present while Goldwire had intercourse with CK.

The Government offered into evidence a photograph of the unopened condom package found in the bedroom, arguing that "the existence of this kind of sexual paraphernalia ... in the apartment, is relevant.... It helps to show the existence of a conspiracy with regard to the activity of rape...." The defense objected on the grounds of relevance and also argued that the condom was prejudicial. The military judge reserved his ruling on the admissibility until a future time when trial counsel had called witnesses to lay a proper foundation for the evidence.

The Government called SA Ware, who conducted the search of the apartment, and appellant's first sergeant, who testified that appellant had moved into the apartment only a few days before the rape. After the testimony of these two witnesses, the military judge admitted the photograph of the condom over defense's renewed relevance objection.

---

1. Airman Crawford corroborated the victim's testimony by testifying that when he left the party there were only four people in the apartment— appellant, CK, Goldwire, and Merritt—and when he returned, the same four people were there.

On appeal, appellant argues that the admission of the condom was erroneous because there was no evidence to connect it to appellant or any agreement involving appellant. In the absence of some link to appellant, the defense argues that the admission of the condom was unduly prejudicial. Additionally, the defense contends that this evidence was prejudicial because the Government, in closing argument, exacerbated the impact of the evidence by mentioning the condom. We find these arguments unpersuasive for the reasons discussed below.

## DISCUSSION

■ Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401, Manual for Courts–Martial, United States (1995 ed.).[2] "All relevant evidence is admissible, except as otherwise provided...." Mil.R.Evid. 402. Relevant evidence is necessary if not cumulative and it "contribute[s] to a party's presentation of the case in some positive way on a matter in issue." *United States v. Abrams*, 50 MJ 361, 362 (1999); RCM 703(f)(1), Discussion, Manual, *supra.*

■ The lower court found the condom to be relevant in order to show a conspiracy to have sexual intercourse with CK, and as corroboration of CK's assertions that the rape occurred in the bedroom. We agree. The photo of the condom was both logically and legally relevant. *See* Mil.R.Evid. 401 and 402. Furthermore, the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice. Mil.R.Evid. 403.

The photograph of the unopened condom presents a backdrop that is probative of what happened. It is not the type of evidence that would invoke passions or lead to an erroneous finding. The evidence of the condom need not be linked directly to appellant. This was a conspiracy prosecution, and it was enough that the condom was reasonably linked to one of the co-conspirators in the bedroom that night. It was up to the jury to decide what inferences, if any, to draw from this prosecution exhibit, in light of all of evidence considered in context.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result):

The victim alleged that she was raped by A1C G while being held down by an unseen person in appellant's bedroom. Appellant asserted in a pretrial statement that he only watched the alleged victim have consensual sex with A1C G on appellant's living room couch and not in his bedroom. The police discovery of an unopened condom under appellant's bed was *"res gestae"* evidence, which might corroborate the alleged victim's testimony at least as to the location of the alleged act of sexual intercourse. *United States v. Kloock*, 652 F.2d 492, 495 (5th Cir. 1981); *see Beeler v. State*, 374 S.W.2d 237, 239 (Tex.Crim.App.1964). This clearly was relevant evidence within the meaning of Mil. R.Evid. 401.

In addition, I am not persuaded that proof of presence of the unopened condom also shows a conspiracy or is relevant to proof of a charge of conspiracy to rape. The Court of Criminal Appeals' rationale on this point is total speculation, but I see no substantial prejudice in its proffered use for this purpose. Art. 59(a), UCMJ, 10 USC § 859(a). Accordingly, I would affirm.

---

**2.** All Manual provisions are cited to the version in effect at the time of trial. The 1998 version is unchanged, unless otherwise indicated.