UNITED STATES of America, Plaintiff-Appellee,

v.

Clyde Alvin WILLIFORD, Sr., Clyde Alvin Williford, Jr., Defendants-Appellants.

No. 83–8647.

United States Court of Appeals, Eleventh Circuit.

July 12, 1985.

---

Steven H. Sadow, Edward T. M. Garland, Donald Samuel, Atlanta, Ga., for defendants-appellants.

Mervyn Hamburg, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and WRIGHT,* Senior Circuit Judge.

EUGENE A. WRIGHT, Circuit Judge:

Four issues are raised in this drug conviction appeal, all of which we answer affirmatively:

(1) was the videotape of the extrinsic act of misconduct, the attempt to purchase a kilogram of cocaine, admissible under Fed.R.Evid. 404(b);

(2) did the court properly admit the transcript of Hammond's sentencing hearing;

(3) was there sufficient evidence to support Williford's conviction on the importation conspiracy; and

(4) did the district court correctly allow transcripts of tape recordings to be sent with the jury for use during deliberations?

## FACTS

Clyde Alvin Williford, Sr. (Williford) and Clyde Alvin Williford, Jr. (Alvin), father and son, were convicted of conspiracy to import marijuana (count II), conspiracy to possess marijuana with intent to distribute (count III), and possession of marijuana with intent to distribute (counts XV and XXII) in violation of 21 U.S.C. §§ 963, 846 and 841(a)(1). This drug conspiracy originated in April of 1979 and continued through the summer of 1982, involving 25 persons. The Willifords joined after Williford asked to see "Red Evans", the conspiracy organizer, in the fall of 1981.

The principal government witnesses were two coconspirators, Prater and Hammond, a government informant. The evidence established that the Willifords took delivery of marijuana on Christmas Eve, 1981, and again in mid-March 1982. On April 25, 1982, they accepted another 1,500 to 1,600 pounds of marijuana which had been flown in that day. At that time, Evans mentioned to Williford that he owed Evans between $280,000 and $300,000. Williford remarked that his credit was good and Evans agreed.

On July 2, 1982, Evans' plane was detected by customs officers as it flew over the windward passage on the high seas. The plane was tracked to Florida where a customs helicopter joined in the pursuit. When the pilot of the Cessna determined that he was being tailed, Evans directed him to jettison the marijuana and land elsewhere. During this attempted importation, the Willifords were waiting at Evans' trailer home.

Hammond also testified that Williford was at Evans' trailer to help unload a truck and weigh another delivery of marijuana on August 11, 1982. Of the 1,800 pounds in this load, Williford received about 900 pounds and a five pound package of cocaine.

Hammond had been cooperating with the police since June, 1982. He surreptitiously recorded several conversations with Prater and Williford. Additionally, on August 3, 1982, he orchestrated a meeting between the Willifords and an undercover agent to negotiate a sale of a kilogram of cocaine for $57,000. This meeting was videotaped. No sale actually occurred, although Williford had the purchase money in hand.

---

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

On September 8, 1982, law enforcement officers executed a search warrant against Evans' trailer. The Willifords drove up the road leading to the trailer during the search and were stopped and questioned. Asked to explain his presence in the area, Williford replied that he was looking for a family that was fishing at a nearby lake. He denied knowing the occupants of the trailer.

The Willifords were arrested on December 17, 1982. Alvin had $4,651 in cash, wrapped in rubber bands.

### I. *Extrinsic Act Evidence*

At trial, the Willifords offered to stipulate that if the jury were to find that they participated in the criminal activity as charged in the indictment, they would stipulate that their acts were with knowledge and intent to join the conspiracy. The government objected and the court refused to accept the proffered stipulation. The Willifords now argue that the evidence of the cocaine negotiation is inadmissible under Fed.R.Evid. 404(b) because it was relevant only on the issue of intent and the stipulation was sufficient to remove intent as an issue.

Although generally inadmissible, evidence of extrinsic misconduct will be admitted under certain exceptions contained in Fed.R.Evid. 404(b). In determining that this extrinsic evidence was admissible, the trial judge said:

> [the] evidence was corroborative as to plan, scheme, modus operandi, and tended to be relevant to the issues in the case of whether or not the defendant in fact committed the crimes charged in the indictment. I found at the time and do now that the probative value of the evidence outweighed the prejudicial effect of it; it was evidence that was needed by the government; and also corroborated the government witnesses whose credibility was severely attacked by the defendant; and that the evidence tended to show a general pattern and scheme used in the conspiracy and was further really inextricably intertwined with the overt act charged in the indictment.

The trial court has broad discretion to determine admissibility of evidence and we will not disturb that ruling absent clear abuse of discretion. *United States v. Cole*, 755 F.2d 748, 766 (11th Cir.1985). The test for admissibility of extrinsic act evidence is whether the evidence is relevant to an issue other than defendant's character and whether its probative value is outweighed by its prejudicial effect. *United States v. Chilcote*, 724 F.2d 1498, 1501–02 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

The second prong of the Rule 404(b) analysis is essentially an application of Fed.R.Evid. 403. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Rule 403 requires the trial judge to weigh the probative value of the evidence against the danger of unfair prejudice, confusion, misleading the jury, or undue delay or waste of time. Fed.R. Evid. 403.

The first requirement is governed by the general relevance provision of Fed. R.Evid. 401 and is a function of the similarity between the extrinsic act and the charged offense. *United States v. Dothard*, 666 F.2d 498, 501–02 (11th Cir.1982). The common characteristic must be the "significant one for the purpose of the inquiry at hand." *Beechum*, 582 F.2d at 911. For example, if the relevant issue is intent, the acts must require similar states of mind. *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir.1981).

Intent is the only issue to which this extrinsic act is relevant. The negotiation for the purchase of cocaine occurred in an Atlanta Holiday Inn, while the charged offenses involved large quantities of marijuana flown into rural Georgia in small aircraft. This evidence is insufficiently similar to establish plan or scheme, *see United States v. Goodwin*, 492 F.2d 1141, 1153 (5th Cir.1974) (mere similarity insufficient, common features of acts must be caused by a general plan); or modus operandi, *see United States v. Alston*, 460 F.2d

48, 55–56 (5th Cir.), (methodology of operations similar in important particulars), *cert. denied,* 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972).[1] When intent is an issue, however, extrinsic evidence is admissible to show willingness to deal in drugs. *See United States v. Hitsman,* 604 F.2d 443, 448 (5th Cir.1979).

The effect of the Willifords' offer to stipulate to intent is not clear in this circuit. Cases dealing specifically with intent state uniformly that if the defendant unequivocally removes intent, as through a stipulation, the extrinsic act evidence cannot be admitted for the purpose of proving intent. *E.g., United States v. Russo,* 717 F.2d 545, 552 (11th Cir.1983); *United States v. Holman,* 680 F.2d 1340, 1349 (11th Cir.1982); *United States v. Bulman,* 667 F.2d 1374, 1382 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); *United States v. Roberts,* 619 F.2d 379, 383 n. 2 (5th Cir.1980).

None of the cases specifically addresses the issue of whether a defendant may force the government to accede or the court to accept such a stipulation. Other circuits have held that whether to accept a stipulation is a matter in the discretion of the trial court. *See, e.g., United States v. Pedroza,* 750 F.2d 187, 201 (2d Cir.1984); *but see United States v. Mohel,* 604 F.2d 748, 753 (2d Cir.1979) (unequivocal offer of stipulation removes intent as issue).

In *Pedroza,* the Second Circuit reasoned that a party normally is permitted to present a picture of the events to the jury. To substitute a stipulation for the picture can rob the evidence of much of its legitimate weight. *Pedroza,* 750 F.2d at 201. The court then explained that the evidence of the extrinsic act was necessary to a complete explanation of the crime charged.

We have held that a trial court did not abuse its discretion in refusing to require the government to accept a proffered stipulation that defendant was a convicted felon when the charges included a felony conviction as an element of the offense. *United States v. O'Shea,* 724 F.2d 1514, 1516 (11th Cir.1984) ("a party may not preclude his adversary's offer of proof by admission or stipulation," citing *Parr v. United States,* 255 F.2d 86, 88 (5th Cir.), *cert. denied,* 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958)). This circuit has refused to adopt a per se rule either for or against admission of evidence when that evidence is relevant to an issue to which the defendant offers to stipulate. Rather, we analyze the offer to stipulate as one factor in making the Rule 403 determination. *O'Shea,* 724 F.2d at 1516, 1517.

We need not reconcile the tension between these two lines of cases. The evidence of the cocaine negotiation was properly admitted to explain the story of the crime.

Evidence of an uncharged offense arising from the same series of transactions as that charged is not an extrinsic offense within Rule 404(b). *United States v. Leichtman,* 742 F.2d 598, 604 (11th Cir. 1984) (evidence of marijuana transaction necessary to complete story of kidnapping because supplied motive, put a trip in perspective and corroborated victim's story); *cf. United States v. Chilcote,* 724 F.2d 1498, 1501 (11th Cir.) (statement extrinsic because witness' testimony not incomplete or confusing without reference to past

---

1. The government also argues that this extrinsic act evidence is admissible to rehabilitate Hammond whose credibility was severely attacked by the defense. The Eighth Circuit may allow this type of evidence to rehabilitate a witness, *see United States v. Legendre,* 657 F.2d 238, 241 (8th Cir.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981), while the D.C. Circuit deals with questions of witness credibility under Fed.R.Evid. 608. *See United States v. Sampol,* 636 F.2d 621, 659 n. 24 (D.C.Cir.1980).

The government argues that rehabilitation evidence is not automatically barred because it

involves uncharged acts of misconduct, citing *United States v. Barrentine,* 591 F.2d 1069, 1081 (5th Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979). The key to that decision, however, was the fact that defense cross-examination opened a door to new questioning and the defense knew this beforehand. *Id.* at 1082.

We decline to reach this issue. The evidence of the Williford's cocaine deal with Hammond was not rehabilitative. The Willifords attacked Hammond's credibility on the basis of the plea bargain that he struck with the government.

acts), *cert. denied*, — U.S. —, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

We need not engage in a 404(b) analysis under these circumstances. *See United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir.1984) (evidence of importing cocaine arose from same series of transactions as charged offense of distribution); *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983); *United States v. Sonntag*, 684 F.2d 781, 788 n. 6 (11th Cir.1982).

■ Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984).

The genesis of this cocaine negotiation occurred in mid-July at a co-conspirator's house where the Willifords and Hammon were waiting. Hammond testified that Williford asked whether Hammond knew if anything would happen soon, that he "was out and needed some marijuana." He also expressed a need for cocaine. Hammond testified that the Willifords were out of marijuana because of the foiled delivery on July 2.

Hammond offered to introduce Williford to another drug supplier. Hammond testified that he set up a meeting in Atlanta between the Willifords and an undercover agent. During a phone conversation with Williford concerning the meeting, they also discussed supplying "push water" or gasoline and a landing strip for Evans' smuggling ventures. The taped conversations concerning this transaction held other references to the conspiracy and to Red Evans, including one that Hammond did not want Evans to learn of the cocaine deal.

Hammond and the Willifords drove to Atlanta to meet the undercover agent on August 3 in the Holiday Inn. Hammond testified about the meeting. The videotapes of defendants both inside and outside

the hotel were introduced later through another witness.

Hammond testified to the events which occurred on the night of the last marijuana delivery before the conspiracy was broken up. The Willifords received a five pound bag of cocaine in addition to their share of the marijuana. Williford commented to Hammond that, "Well, I've got that thing we've been looking for." The conspirators sampled the cocaine and Williford said that he wanted the cocaine to demonstrate to a potential client that he could procure "good stuff."

■ The conversation preceding the negotiation was admissible. It established the Willifords' desire to obtain cocaine and marijuana outside the conspiracy because their source within the conspiracy was dry. *See also United States v. Costa*, 691 F.2d 1358, 1360–61 (11th Cir.1982) (evidence of prior drug deals inextricably bound to witness' account of circumstances of charged offense).

In examining the record, we are also of the opinion that the evidence was properly introduced to explain conversations held between Hammond and the Willifords. *See United States v. Lentz*, 624 F.2d 1280, 1288–89 (5th Cir.1980), *cert. denied*, 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981); *United States v. Aleman*, 592 F.2d 881, 884–85 (5th Cir.1979). In conversations concerning the cocaine negotiations, the conspiracy was discussed. Upon taking delivery of the cocaine within the conspiracy, the prior negotiations were referred to.

While not all bad acts occurring within the time frame of a conspiracy are automatically admissible, the fact that the cocaine negotiations occurred with a witness co-conspirator during the time of the conspiracy weighs heavily toward finding the acts are intertwined. *See United States v. Gonzalez*, 661 F.2d 488, 494 (5th Cir.1981) (evidence of uncharged drug deals completed government witness' account); *United States v. McCrary*, 699 F.2d 1308, 1311 (11th Cir.1983) (evidence of uncharged dealings in marijuana and quaaludes "not so

greatly separated in time or nature as to be extrinsic").

■ Finally, we note that the trial judge determined that the probative value of this evidence was not outweighed by its pejudice. *See* Fed.R.Evid. 403; *Cole,* 755 F.2d at 766–67 (rule 403 applied sparingly). Any lack of similarity between the charged offense and the extrinsic act is merely to be considered in determining the probity of the evidence under the 403 analysis. *Beechum,* 582 F.2d at 913–16. A limiting instruction was given to the jury just before it viewed the videotape. We see no clear abuse of discretion on these facts.

## II. *Sufficiency of the Evidence*

Williford challenges his conviction of conspiracy to import controlled substances in violation of 21 U.S.C. § 952(a)(1). While the evidence revealed that he was involved in a conspiracy to distribute, he contends that there was insufficient evidence to support the jury's verdict linking him to the importing operation.

In reviewing the sufficiency of the evidence, we must determine whether, examining the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt. *United States v. Cortez,* 757 F.2d 1204, 1208 (11th Cir.1985); *Cole,* 755 F.2d at 755; *United States v. Vera,* 701 F.2d 1349, 1356 (11th Cir.1983). All reasonable inferences must be drawn in favor of the jury's verdict. *Cole,* 755 F.2d at 755; *see Glasser,* 325 U.S. at 80, 62 S.Ct. at 469.

■ Conspiracy to import and conspiracy to distribute are separate crimes. Proof of one is not proof of the other. *See Albernaz v. United States,* 450 U.S. 333, 339, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); *United States v. Manbeck,* 744 F.2d 360, 387 (4th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). To support a conviction for both conspiracies, knowledge of and participation in each must be proved. *Manbeck,* 744 F.2d at 387. There is no clear line establishing where one conspiracy ends and the other begins. *See id.* at 390 (court refused to adopt the position that the act of unloading constitutes participation in the conspiracy to distribute as opposed to merely completion of the conspiracy to import). A defendant may be convicted of both conspiracies based on the same evidence. *Id.* at 387; *see Albernaz,* 450 U.S. at 339, 101 S.Ct. at 1142.

■ In order to convict for conspiracy to import, the government must prove that a conspiracy existed, the defendant was aware of its essential objectives and voluntarily participated. *United States v. Elledge,* 723 F.2d 864, 866 (11th Cir.1984); *United States v. Luis-Gonzalez,* 719 F.2d 1539, 1544 (11th Cir.1983). Direct evidence of the elements of a conspiracy is not necessary; circumstantial evidence is sufficient, such as acts committed by the defendant which further the purpose of the conspiracy, *Vera,* 701 F.2d at 1357; *Manbeck,* 744 F.2d at 386, or inferences from the conduct of the defendant or circumstances indicating a plan or scheme. *United States v. Bascaro,* 742 F.2d 1335, 1359 (11th Cir.1984).

■ A coconspirator need not be privy to the details of the conspiracy or participate at every stage. *Cole,* 755 F.2d at 755. Close association and proximity to the crime are not enough, *Vera,* 701 F.2d at 1357; but may be considered as a factor. *United States v. Cannington,* 729 F.2d 702, 709 (11th Cir.1984).

There is no dispute that an importation conspiracy existed or that Williford was aware of its essential objectives. *Cf. United States v. Soto,* 591 F.2d 1091, 1104 (5th Cir.), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979) (no evidence showing that the marijuana had come from outside the country); *United States v. Maslanka,* 501 F.2d 208, 216 (5th Cir.1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975) (same). The question is whether Williford participated voluntarily.

Evidence sufficient to sustain a conviction for conspiracy to import has been

found where a defendant attended meetings with coconspirators and otherwise furthered the conspiracy to import. *United States v. Cortez*, 757 F.2d 1204 (11th Cir. 1985) (one defendant attended meetings, located personnel, and was a contact point; the other searched for a missing boat and assisted in off-loading); *Cannington*, 729 F.2d at 709 (attended meetings and diverted police attention from the conspiracy); *Elledge*, 723 F.2d at 868–69 (attended meetings and discussed arrangements, without participating in any physical activity).

We have upheld convictions of conspiracy to import despite a minor role in the scheme. In *United States v. Loyd*, a conviction was upheld on evidence that a defendant attended a briefing session at a warehouse and appeared on a boat with the leader of a smuggling ring. 743 F.2d 1555, 1561 (11th Cir.1984). In *United States v. Kelly*, convictions were upheld for a defendant who had placed a telephone call to borrow a car, another who had assisted in loading marijuana onto a boat, and one who had carried a boat to a dock. 749 F.2d 1541, 1546–47 (11th Cir.1985).

In *United States v. Bascaro*, we stated that although the existence of a buyer-seller relationship alone does not furnish the requisite evidence of a conspiracy agreement, where a buyer knowingly assumes a role instrumental to the success of the conspiracy, the jury may properly infer that he is a member in it. 742 F.2d at 1359. We found the defendants to be more than "mere purchasers." They were among the seller's best buyers and maintained a close relationship with the sellers. *Id.* The success of the selling group's endeavors depended on the buyers. *Id.*

In *United States v. Phillips*, the government characterized a defendant's statement that "everything was secure at San Marino" as an admission of involvement in the importation conspiracy. 664 F.2d 971, 1033 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354

(1982). Coupled with evidence that he made or received telephone calls at a marijuana "stash house" and his fingerprints on items seized at the house, the court concluded that the jury could find him guilty of importation. *Id.*

Viewing the evidence in a light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, we conclude that sufficient evidence was presented from which the jury could decide beyond a reasonable doubt that Williford was a participant in the conspiracy to import marijuana.

He was privy to the intimate details of the conspiracy and was on hand when shipments of marijuana arrived. *See Loyd*, 743 F.2d at 1561; *Cannington*, 729 F.2d at 709. He participated in at least one unloading[2] and weighing activity. *See Manbeck*, 744 F.2d at 387 (act of unloading completed the conspiracy to import).

Further, while waiting for the July 2 shipment Williford was told that the aircraft was being followed and so instructed Alvin to tell others who were waiting to leave. The jury could reasonably conclude that this statement was an admission of involvement. *See Phillips*, 664 F.3d at 1033.

Finally, Williford maintained a close relationship with the sellers and purchased a substantial percentage of the marijuana on consignment. From all of these circumstances, the jury could reasonably conclude that Williford had knowingly assumed a role instrumental to the success of the conspiracy. *See Bascaro*, 742 F.2d at 1359.

### III. *Admission of the Sentencing Transcript*

The Willifords next contend that the court erred in admitting in evidence the transcript of Hammond's sentencing hearing. Their counsel made reference to the plea agreement and its contents during his

---

**2.** Williford and Alvin arrived at the residence with Evans in a pickup containing marijuana that had been off-loaded from an aircraft. In addition to participating in the transportation of the marijuana to the point at which it would be divided and distributed, the government argued that the jury could infer that this participation was also an act of protection, as a curious individual had come upon the airstrip earlier and had been frightened away.

cross-examination of Hammond. The prosecution offered the transcript in response. It contained testimony from two government agents who were involved in the case and laudatory comments from the judge. The judge's comments were purged, but the remainder of the transcript was admitted.

At trial, defense counsel argued that his questioning regarding Hammond's plea agreement did not include the agents' testimony and did not "open the door" for admission of the sections containing the testimony. The trial judge rejected the argument because Hammond had been questioned about what was contained in the agreement, so the entire transcript was relevant. The Willifords renew their argument on appeal, but show no abuse of discretion in admitting the transcript. The trial judge's decision on relevance will not be reversed absent such a showing. *Cole,* 755 F.2d at 766.

The Willifords contend that the transcript was inadmissible for two reasons. First, the agents' testimony was hearsay because neither agent testified at trial and could not be cross-examined about the sentencing hearing statements. However, defense counsel did not object to the admission on the grounds of hearsay, nor did he request a cautionary instruction.

Objections must be made "with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Fendley,* 522 F.2d 181, 186 (5th Cir.1975). The Willifords' counsel primarily argued that admitting the statements would constitute governmental bolstering of Hammond's credibility. There was only vague reference to a concern about the inability to cross-examine the agents. The statements were not sufficiently specific to apprise the trial judge of a hearsay objection.

Evidentiary errors that are not specifically objected to at trial are reviewed for plain error. *Gonzales,* 661 F.2d at 493. We correct only for errors that are particularly egregious and that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Young,* —— U.S. ——, ——, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)), and then only when a miscarriage of justice would result. *Young,* —— U.S. at ——, 105 S.Ct. at 1047. After reviewing this entire record, *id.,* we find no such error here.

Secondly, appellants assert error in that the statements constitute bolstering of Hammond's credibility. The prosecutor may not bolster a witness' credibility by placing the prestige of the government behind the witness or by referring to matters outside the record. *United States v. Garza,* 608 F.2d 659, 664 (5th Cir.1979). Williford contends that admitting the statements bolstered Hammond in both regards and that the statements of government agents are indistinguishable from those of a prosecutor.

The admission of the plea agreement does not constitute bolstering by the prosecutor. *United States v. Martino,* 648 F.2d 367, 389 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). "If the defense relies upon the existence of a plea bargain to attack the credibility of the witness, it is not then entitled to preclude the jury from being apprised of additional matters relevant to the bargain." *Id.,* quoting *United States v. Rosson,* 441 F.2d 242, 244 (5th Cir.), *cert. denied,* 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78 (1971). The admission of the transcript did not constitute bolstering.

The claim that the agents' statements are indistinguishable from those of the prosecutor fails also. Government agents are proper witnesses. The proscription on bolstering seeks to control the prosecutor's conduct. *See United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). It is inapplicable to witnesses, government agents or others. The objection to admitting the agents'

statements should have been on hearsay grounds, not a claim of bolstering.

## IV. *Transcripts of Taped Conversations*

Finally, Williford argues that the court erred in allowing transcripts of taped conversations to go to the jury room during deliberations. He claims the transcripts placed undue emphasis on the taped testimony. Absent a showing that the transcripts were inaccurate or that specific prejudice occurred, there is no error in allowing transcripts to go to the jury room. *Costa*, 691 F.2d at 1362–63. Williford has made no such showing.

## CONCLUSION

We find no error requiring reversal in this record. The evidence of the cocaine negotiation was inextricably intertwined with other admissible evidence. The evidence is sufficient to sustain the jury verdict against Williford of conspiracy to import marijuana. The sentencing transcript, while hearsay, was not objected to on that ground and its admission was not plain error. Finally, the transcripts of taped conversations were properly allowed in the jury room.

AFFIRMED.