[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15172

_____

D.C. Docket No. 03-21000-CR-AJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 15, 2006
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

VIVIAN CIARROCHI,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(February 15, 2006)**

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*],
District Judge.

_____

[*]Honorable Willis B. Hunt, Jr., United States Senior District Judge for the Northern
District of Georgia, sitting by designation.

PER CURIAM:

Vivian Ciarrochi appeals her convictions for conspiring to possess, obtain and transfer, through fraud and other means, "Employment Authorization Documents"[1] ("EAD cards") issued by the Immigration and Naturalization Service ("INS") in violation of 18 U.S.C. § 371, and for knowingly possessing, obtaining and transferring EAD cards in violation of 18 U.S.C. §§ 1546(a) and 1028(a)(2) and 2.

On appeal, Ciarrochi argues that the evidence produced at trial is insufficient to sustain her conviction for conspiracy and immigration fraud and that the district court abused its discretion by denying her motion for new trial. Specifically, Ciarrochi submits that she is entitled to a new trial because the government deliberately deported witnesses that she contends would have provided exculpatory evidence and that certain evidence was improperly admitted at trial. We consider each argument in turn.

---

[1] An EAD card is a work permit, authorizing an alien to obtain employment legally in the United States. EAD cards contain identifying information, such as the holder's photograph, fingerprint, name, date of birth and Alien Number and may be used to obtain other forms of identification, including a Social Security card and driver's license. 8 U.S.C. § 1324a(b)(1)(B). Individuals legally present in the United States and in the process of becoming a legal resident are eligible for EAD cards, while those illegally in the U.S are not. 8 C.F.R. § 274a.12.

## Sufficiency of the Evidence

Sufficiency of the evidence is an issue that we review *de novo* to determine whether "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government could find the defendant[] guilty as charged beyond a reasonable doubt." United States v. Williams, 339 F.3d 1295, 1299 (11th Cir. 1993)(internal quotations omitted). Applying this standard to the circumstances of this case, we find the evidence presented at trial more than sufficient to support Ciarrochi's convictions.

First, an agent from the Bureau of Immigration and Customs Enforcement ("ICE") testified that Ciarrochi, after becoming a target of the investigation through interviews of illegal aliens in possession of fraudulent EAD cards, cooperated at first with the investigation and arrest of her co-conspirators, Miguel Raggio, the middleman who took the aliens to the INS, and Isidro Guerrero, the INS employee who issued the fraudulent EAD cards. Her assistance included making controlled calls to Raggio, informing him that she had a group of people who wanted to purchase false EAD cards from Guerrero at the INS. Later, the agent witnessed Ciarrochi meet with Raggio and provide him with cash and the personal information of the purchasers. After collecting and turning over the money and information to Raggio, Ciarrochi would then instruct the alien

customers where to meet Raggio so they could be taken to the INS office to obtain the fraudulent EAD cards from Guerrero.

Ciarrochi also provided ICE agents with a detailed list of over seventy aliens whom she personally recruited and arranged for the purchase of false EAD cards.[2] This list turned out to be inaccurate, however, because Ciarrochi later admitted that she actually handled over two hundred aliens.

In addition to the agent's testimony, Raggio testified against Ciarrochi at trial, identifying her as a key participant in the scheme. After admitting to his role as the middleman who escorted the customers to the INS where Guerrero provided the EAD cards, Raggio identified Ciarrochi as the person who "collected" the people for the scheme, coordinated the process out of her home, informed purchasers of and collected the high fees in cash, handed out the necessary forms, accepted and later returned customer's passports with fraudulent entry stamps, and eventually instructed customers where to meet either Raggio or herself in order to receive the false EAD cards. He further testified that Ciarrochi always received a share of the proceeds for her participation and typically identified herself to

---

[2] Part of the scheme required aliens to relinquish their passports to Ciarrochi or Raggio in order to receive a fraudulent entry stamp on their passports. An entry stamp verifies an alien's date of entry into the United States and that stamp can only be issued by a law enforcement officer. Ciarrochi's passport also contained a fraudulent entry stamp.

customers as Raggio's secretary.

Finally, several alien witnesses who purchased fraudulent EAD cards testified about Ciarrochi's role in the scheme. All of these witnesses met with Ciarrochi in her home and testified that she quoted the cost of the service, accepted their cash payments, coordinated the meeting place where the customers would then receive the false EAD cards, filled out immigration forms and applications, and returned entry forms and passports back to customers bearing a fraudulent entry stamp. One witness testified that upon receiving her payment for the EAD card, Ciarrochi stated that this money was for the doctor, referring to Ciarrochi's pregnancy.

In light of this overwhelming evidence against her, we find Ciarrochi's sufficiency of the evidence claim without merit.


Motion for New Trial

Ciarrochi argues that she should have been granted a new trial because neither the testimony of rebuttal witness, Guette Gilles, nor her passport or the list of immigrants that she compiled for the INS should have been admitted at trial. She also contends that the government improperly deported certain witnesses who would have testified in her favor, thereby entitling her to a new trial.

5

We review the denial of a motion for a new trial for abuse of discretion. United States v. Pendergraft, 297 F.3d 1198, 1204 (11th Cir. 2002). Evidentiary and other non-constitutional errors, however, are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected. United States v. Range, 94 F.3d 614, 620 (11th Cir. 1996). Where an error had no substantial influence on the outcome, and sufficient evidence unaffected by error supports the verdict, a new trial is not warranted. United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990). The admission of testimony not objected to at trial is reviewed only for plain error. United States v. Williford, 764 F.2d 1493, 1502 (11th Cir. 1985).

Guette Gilles, an INS examiner called by the Government as a rebuttal witness, testified about INS procedures concerning permanent residency applications during the time that Ciarrochi first entered the United States in 1990. Ciarrochi submits it was error to admit this testimony because Gilles did not become an examiner until one month after Ciarrochi arrived. However, in response to this objection, the district court instructed the jury that Gilles did not have personal knowledge of Ciarrochi's case and was only testifying about INS procedures during late 1990. Having reviewed the record and considered both the context of the testimony and the district court's limiting instruction, we find no

6

reversible error.

Likewise, after a plain error review, we find no reversible error in the admission of Ciarrochi's passport and list of alien recruits. Ciarrochi argues that these documents are inadmissible pursuant to her letter of immunity provided by the government during her interview with INS agents. However, that letter of immunity was conditioned upon Ciarrochi providing truthful information and it is undisputed that she lied about the number of aliens she recruited to purchase fraudulent EAD cards. Consequently, the admission of this evidence did not violate the immunity letter.

Finally, we find no merit in Ciarrochi's contention that the Government maliciously deported witnesses who would have provided exculpatory evidence. According to her, these witnesses would have testified that Raggio charged $6,500.00 per false EAD card, which would prove that Ciarrochi did not earn any money from these transactions. This fact, argues Ciarrochi, establishes that she did not have knowledge of the illegal scheme. We find, however, that such testimony would be cumulative as at least three other witnesses testified that Raggio charged $6,500.00 for their EAD cards.

**AFFIRMED**