[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 27, 2006**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 05-10847

_____

D. C. Docket No. 99-00110-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PRESBITERIO DEL RIO,
a.k.a. Juan Torres,
a.k.a. Mon,
a.k.a. Hisabilita Ramo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 27, 2006)**

Before BLACK, HULL and FARRIS[*], Circuit Judges.

PER CURIAM:

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Appellant Presbiterio Del Rio appeals his conviction and sentence for conspiring to possess with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Del Rio alleges the district court erred by admitting statements in violation of his right against self-incrimination under *Miranda v. Arizona*, 86 S. Ct. 1602 (1966), admitting out-of-court statements in violation of his Sixth Amendment right to confrontation under *Crawford v. Washington*, 124 S. Ct. 1354 (2004), and denying his motion for a mistrial despite prosecutorial misconduct and the admission of prejudicial character evidence.[1] For the reasons set forth more fully below, we affirm Del Rio's conviction and sentence.

## I. BACKGROUND

This case concerns a narcotics distribution scheme whereby cocaine was transported from Mexico through Texas to various cities, including Atlanta. By 1997, the Drug Enforcement Administration (DEA), aware of the smuggling, secured the cooperation of a confidential informant, Lucia Pancari, a drug courier for one of the ring's members, Robinson Pena. Pancari described how couriers

---

[1] Del Rio further asserts the district court erred by (1) admitting evidence obtained in violation of the Fourth Amendment; (2) admitting expert testimony despite the Government's discovery violations with respect thereto; and (3) enhancing his sentence based on prior convictions that were not charged in the indictment or proven to a jury beyond a reasonable doubt. These arguments are without merit and require no discussion.

drove vehicles packed with narcotics to a destination city, whereupon Pena would arrange with purchasers, including Del Rio, to retrieve the drugs.

At trial, DEA Agent Genni Ruzzi related that in February 1998, Pena solicited Pancari to drive a shipment of cocaine from Houston to Atlanta. Seeking to control this delivery as part of the DEA's investigation, Agent Ruzzi outfitted Pancari's phone with a recording device that allowed her to listen to and record conversations between Pena and Pancari. Agent Ruzzi detailed the substance of these recorded conversations, describing how Pena arranged to have Pancari retrieve a vehicle loaded with cocaine, and how Pancari contacted Pena, who then contacted Del Rio, when she arrived in Atlanta.

Another courier, Francesca Simmonds, testified that, on several occasions, she drove vehicles packed with narcotics from Houston to Atlanta for her husband, Lionel DeJesus, an associate of Pena's. Simmonds noted that once in Atlanta, she would page Del Rio, who often arrived with others to retrieve the vehicles.

The fruits of the Government's investigation eventually led to Del Rio's arrest on May 14, 2003, on an indictment charging him with conspiring to possess with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Upon his arrest, Del Rio was advised of his *Miranda* rights and consented verbally and in writing to a search of his residence. Del Rio

informed law enforcement he rented a room at the residence and had access to his room and the rest of the house, except for those bedrooms he did not rent. After agents searched the residence, they asked Del Rio if he wished to cooperate with their investigation, to which he replied "I'm no snitch," and "[I do] not believe in providing information regarding other individuals."

During trial, Del Rio lodged a number of objections to the Government's case. He objected, for example, to the district court's admitting evidence of his using an alias, "Juan Torres," as prejudicial character evidence. Del Rio also objected to the prosecutor's description of him as a "fugitive"[2] and reference to his incarceration pending trial,[3] objections the district court sustained.

On August 31, 2004, a jury returned a guilty verdict against Del Rio, finding the quantity of cocaine involved to be more than five kilograms. On January 7, 2005, the district court sentenced him to life imprisonment and ten years of supervised release. *See* 21 U.S.C. § 841(b)(1)(A). Del Rio appeals his conviction and sentence, raising many of the arguments he pressed in the district court.

---

[2] During the Government's case-in-chief, the prosecutor asked a witness, "Were you contacted about a fugitive that had been arrested on [May 14, 2003] by the U.S. Marshals service?"

[3] In arguing the reliability of a witness identification during his closing argument, the prosecutor stated "Now, [defense counsel] also made a big deal about how dark he is compared to the defendant. I'd submit [defense counsel] has probably been out in the sun since May 14th of 2003, whereas the defendant hasn't."

4

## II. DISCUSSION

A. *Whether the District Court Admitted Statements in Violation of Appellant's Right Against Self-Incrimination*

Del Rio asserts the district court erred in denying his motion to suppress statements obtained in violation of his right against self-incrimination under *Miranda v. Arizona*, 86 S. Ct. 1602 (1966). He argues his May 14, 2003, statements "I'm not a snitch" and "[I do] not believe in providing information regarding other individuals" were invocations of his right to remain silent, such that comments he made soon thereafter were procured and admitted at trial in violation of the Fifth Amendment. We apply a mixed standard of review to the denial of a defendant's motion to suppress, reviewing the district court's findings of fact for clear error and its application of law to those facts de novo. *See United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005).

In *Miranda*, the Supreme Court held that when a person undergoing custodial interrogation indicates in any manner his desire to remain silent, prior to or during questioning, the interrogation must cease. *Miranda*, 86 S. Ct. at 1627-28. Law enforcement officers are not required to terminate an interrogation, however, unless the invocation of the right to remain silent is unambiguous. *See Medina v. Singletary*, 59 F.3d 1095, 1100-01 (11th Cir. 1995) (citing *Davis v. United States*, 114 S. Ct. 2350, 2355 (1994)). If the invocation is ambiguous or equivocal, the

5

interrogating officer has no duty to clarify the suspect's intent and may proceed with questioning. *See United States v. Mikell*, 102 F.3d 470, 476 (11th Cir. 1996). The inquiry into the ambiguity of a suspect's invocation of his right to remain silent is objective, with the salient question being whether the "suspect . . . articulate[d] his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." *Coleman v. Singletary*, 30 F.3d 1420, 1424 (11th Cir. 1994).

In this case, it is undisputed that upon his arrest on May 14, 2003, Del Rio was advised of, and understood, his *Miranda* rights. Soon thereafter, Del Rio consented to a search of his residence, offering several statements about his living arrangements. Law enforcement officers then asked Del Rio whether he would be willing to cooperate with the Government, to which he replied "I'm no snitch" and "[I do] not believe in providing information regarding other individuals."

The record shows Del Rio was advised of, and fully understood, his *Miranda* rights and nonetheless continued to speak with law enforcement. His reluctance to provide information regarding other individuals, therefore, did not evince a clear desire to cease questioning, thereby invoking his right to remain silent. Rather, given Del Rio freely spoke about himself and consented to a search

6

of his residence, a reasonable law enforcement officer could have interpreted his statements to mean Del Rio was willing to cooperate with respect to his own arrest, but not implicate others. Del Rio's statements "I'm no snitch" and "[I do] not believe in providing information regarding other individuals" were, at best, ambiguous and equivocal comments that did not clearly invoke his right to remain silent. Thus, the district court did not err in denying Del Rio's motion to suppress these statements.[4]

B.     *Whether the District Court Admitted Testimony in Violation of Appellant's Sixth Amendment Right to Confrontation*

Del Rio asserts the admission of testimony from Agent Ruzzi and Francesca Simmonds violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 124 S. Ct. 1354 (2004), because it included hearsay from individuals he had no prior opportunity to cross-examine. Del Rio objects to the admission of (1) statements from Pena and DeJesus, related by Agent Ruzzi and Simmonds,

---

[4] Del Rio also asserts the prosecutor's closing argument, wherein counsel inferred a consciousness of guilt from Del Rio's statement "I'm no snitch," constituted an impermissible comment on his silence in violation of the Fifth Amendment under *Doyle v. Ohio*, 96 S. Ct. 2240 (1976). We see no constitutional defect in the prosecutor's closing argument because the argument was not based on Del Rio's silence, but was instead based on speech failing to clearly invoke the right to remain silent. The prosecutor's argumentative strategy did not invite the jury to make an inference from Del Rio's post-arrest silence; rather, it invited the jury to make an inference based on comments uttered after Del Rio knowingly and voluntarily waived his *Miranda* rights.

7

respectively; (2) Pancari's statements to Pena, as described by Agent Ruzzi; and (3) Pancari's remarks to Agent Ruzzi, which Agent Ruzzi recited at trial.

We review a district court's ruling with respect to the admission of testimony for abuse of discretion. *See United States v. Breitweiser*, 357 F.3d 1249, 1254 (11th Cir. 2004). Where evidentiary issues relate to a claimed violation of the Sixth Amendment, however, we review the district court's rulings de novo, reversing only for harmful error. *See United States v. Nealy*, 232 F.3d 825, 829 (11th Cir. 2000).

In *Crawford*, the Supreme Court refined Confrontation Clause jurisprudence under the Sixth Amendment, holding out-of-court testimonial statements may not be admitted against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 124 S. Ct. at 1374. While *Crawford* restricted the constitutionally permissible use of *testimonial* hearsay in criminal cases, the *Ohio v. Roberts*, 100 S. Ct. 2531 (1980), line of cases continues to control as to *nontestimonial* hearsay. *Crawford*, 124 S. Ct. at 1374. Nontestimonial hearsay is, therefore, beyond the compass of *Crawford*'s holding, but its admission still violates the Confrontation Clause unless the out-of-court statement falls within a firmly rooted hearsay exception, or otherwise carries a particularized guarantee of trustworthiness. *See United States*

8

*v. Baker*, 432 F.3d 1189, 1204 (11th Cir. 2005) (citing *Roberts*, 100 S. Ct. at 2539).

In this case, Agent Ruzzi and Simmonds related out-of-court statements from Pena and DeJesus, Del Rio's co-conspirators, made in furtherance of the conspiracy. In *Crawford*, the Supreme Court noted co-conspirator statements made in furtherance of a conspiracy are nontestimonial and, therefore, not subject to the requirements of declarant unavailability and prior cross-examination. *Crawford*, 124 S. Ct. at 1367 (opining statements in furtherance of a conspiracy are "by their nature . . . not testimonial"). In *Bourjaily v. United States*, 107 S. Ct. 2775, 2782-83 (1987), moreover, the Supreme Court held "the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that . . . a court need not independently inquire into the reliability of such statements." Thus, the out-of-court remarks from Pena and DeJesus, Del Rio's co-conspirators, were nontestimonial statements falling under a firmly rooted hearsay exception and, as such, their admission did not offend Del Rio's rights under the Sixth Amendment.[5]

Del Rio also objects to the district court's admitting Agent Ruzzi's testimony insofar as she related statements Pancari made to Pena during several

---

[5] We also note Pena's out-of-court statements were admissible because he testified at trial and was cross-examined by Del Rio's counsel. *See United States v. Owens*, 108 S. Ct. 838, 846 (1988) (concluding "the Sixth Amendment presents no obstacle to the introduction of such an . . . out of court statement, at least not where the declarant testifies under oath at trial and is subjected to unrestricted cross-examination").

telephone conversations. Recordings of these conversations, however, were admitted into evidence without objection and played for the jury. Agent Ruzzi's testimony in this regard, like the admitted recordings, included no objectionable hearsay and, consequently, the district court committed no error in admitting out-of-court statements Pancari made to Pena.

Finally, Del Rio challenges the admission of Agent Ruzzi's testimony to the extent she recited out-of-court statements Pancari made to her concerning Pancari's relationship with Pena. The district court did not err in admitting Agent Ruzzi's testimony in this regard. First, Agent Ruzzi did not recite any specific statements Pancari made. Second, even if Agent Ruzzi had related Pancari's comments, these statements were admissible to explain the course of the investigation that ultimately led to Del Rio's arrest. For example, Pancari's statements accounted for how and why the DEA controlled the shipment of cocaine from Houston to Atlanta. As Agent Ruzzi did not relate any particular statements and such statements would, in any event, have had a legitimate non-hearsay purpose, the district court's admission of Pancari's statements to Agent Ruzzi did not violate Del Rio's Sixth Amendment rights.

C.  *Whether the Cumulative Effect of Prejudicial Character Evidence and Prosecutorial Misconduct Required a Mistrial*

Del Rio next argues the district court abused its discretion by admitting evidence of his bad character to show conduct in conformity therewith, the cumulative effect of which, coupled with prosecutorial misconduct, resulted in an unfair trial. First, Del Rio asserts the district court erred in admitting evidence of his use of a Georgia driver's license and attempt to obtain a United States passport under the alias "Juan Torres." Second, he challenges the prosecution's characterization of him as a "fugitive" and reference to his incarceration pending trial. The cumulative effect of this improperly admitted evidence and prosecutorial misconduct, Del Rio contends, required the district court to declare a mistrial.

The district court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion. *See United States v. Ross*, 131 F.3d 970, 987 (11th Cir. 1997).

Federal Rule of Evidence 404(b) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rule 404(b)'s prohibition, however, does not extend to evidence offered for a non-character purpose. *See* Fed. R. Evid. 404(b) advisory committee's note. For example,

> [e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of

11

the crime, or is necessary to complete the story of the crime for the jury.

*United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

We are convinced the district court did not err in admitting evidence of Del Rio's use of the alias "Juan Torres." The Government introduced this evidence not as circumstantial evidence of Del Rio's bad character, but as a means by which to connect Del Rio to the predicate acts of the conspiracy. Most notably, the evidence established Del Rio's connection to the cocaine seized at 465 Martins Court, the same residence he attempted to rent under the name "Juan Torres," and the same address Del Rio listed on a passport application, using the name "Juan Torres." In short, the evidence of Del Rio's alias was necessary for the understanding of other pieces of evidence. Thus, the district court did not abuse its discretion in admitting evidence of Del Rio's alias, as it was contemporaneous, contextual evidence forming an integral and natural part of an account of the crime for which he was charged. *See Williford*, 764 F.2d at 1499; *accord United States v. Jorge-Salon*, 734 F.2d 789, 791-92 (11th Cir. 1984) (holding "[t]he use of an alias . . . in evidence is permissible if it is necessary to connect the defendants with the acts charged").

We are similarly unconvinced the Government's characterization of Del Rio as a fugitive and reference to his incarceration pending trial were so prejudicial as

to require a mistrial. To succeed on this challenge, Del Rio must establish both the impropriety of the prosecutorial remarks and their prejudicial effect on his substantive rights. *See United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir. 1983). In assessing the nocent effects of improper argument, "we consider the presence of curative instructions and the strength of the government's case." *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985). When the district court issues a curative instruction, moreover, we will reverse its decision to deny a mistrial only if the evidence "is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Funt*, 896 F.2d 1288, 1295 (11th Cir. 1990) (quotation omitted).

In sustaining Del Rio's objections to the improper statements in this case, the district court instructed the jury on two separate occasions to "disregard that comment . . . and draw no inference from it whatsoever . . . ." Because the Government's statements were not sufficiently pervasive or prejudicial to illustrate the futility of the court's curative instructions, we believe any prosecutorial error was cured by the court's cautionary directives. The evidence of Del Rio's guilt, moreover, was substantial. In sum, while the Government's statements were indeed improper, they were isolated comments, the prejudicial effect of which was ameliorated by curative instructions and the considerable evidence of Del Rio's

13

guilt.  The district court, therefore, did not abuse its discretion in denying Del Rio's request for a mistrial.

## III.  CONCLUSION

For the foregoing reasons, Del Rio's conviction and sentence are affirmed.

AFFIRMED.