[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Dec. 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12210
Non-Argument Calendar

_____

D. C. Docket No. 05-60120-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICOLAS FRANCOIS JEANTY, JR.,
a.k.a. Nicki,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 18, 2009)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Nicolas Francois Jeanty, Jr. ("Jeanty") appeals his convictions for conspiracy and attempt to possess cocaine with intent to distribute. The district court did not abuse its discretion by admitting evidence of Jeanty's prior drug convictions because the evidence was necessary to explain the interaction between Jeanty and his co-conspirator. Accordingly, we AFFIRM.

## I. BACKGROUND

In May 2005, Jeanty and Vladimir Perodin ("Perodin") were indicted on one count of conspiracy to possess cocaine with intent to distribute and one count of attempt to possess cocaine with intent to distribute. R1-6 at 1-2. In November 2008, in compliance with the discovery order, the government provided a notice that some of the evidence it intended "to use as evidence at trial to prove its case in chief" included certain documents. R1-52 at 1. In relevant part, attached to the government's filing was a February 2005 summary of an interview of Perodin. R1-52, Attach. at 72-74. Perodin told an FBI agent that he had been involved in drug trafficking since 1999. Id. at 72. Jeanty was one of Perodin's drug distributors. Jeanty usually bought about one kilogram of cocaine at a time from Perodin. Id. at 73. Perodin usually gave Jeanty the cocaine, and Jeanty would pay him for it one to two days later. Id.

2

Three months after the pre-trial notice, at trial in February 2009, Perodin testified as follows: He and Jeanty were meeting Jean Max Alce ("Alce") in February 2005 to purchase five kilograms of cocaine. R5 at 68-69. Perodin and Jeanty were going to pay for one kilogram immediately and pay for the rest after they sold it. Id. at 70. Alce was willing to accept less than full payment up front because Perodin and Jeanty had purchased cocaine from Alce in the past using that method. Id.

Jeanty objected to Perodin's testifying about any prior drug transactions between himself and Jeanty. Id. at 70-71. The court asked the government whether it had provided any notice under Fed.R.Evid. 404(b) for the ten separate transactions the government wanted to address. Id. at 71. The government responded that it had given Jeanty copies of Perodin's debriefing, but acknowledged that it had not filed a notice specifically referencing Rule 404(b). Id. at 71-72. The court ruled that the evidence was not admissible under Rule 404(b). Id. at 72. The government argued that the evidence was intertwined with how the charged transaction occurred. The court ruled that the prior transactions were separate and were not included in the indictment. Id. at 72-73.

At a break in the trial, the government explained that it had given notice of the prior bad acts in the November 2008 discovery packet in the form of Perodin's

debriefing and in a fax sent five days before trial. Id. at 74-75. In the fax was a second debriefing in which Perodin stated that he had sold Jeanty one kilogram of cocaine approximately ten times. Id. at 75. The government argued that Jeanty had notice that the evidence would be presented, even if no formal notice referenced Rule 404(b). Id. at 76. The court asked Jeanty what he would have done differently if he had received notice of the second debriefing in the first discovery packet, and Jeanty responded that he would have tried to develop alibis to show that he did not do the drug transactions Perodin described. Id. at 78-80. The district court decided not to change its ruling. Id. at 82. Later in direct examination, Perodin testified that Jeanty was babysitting Perodin's daughter while Perodin picked up the drugs from Alce for the February 2005 transaction. Id. at 113-14. On cross-examination, Perodin admitted that Jeanty frequently visited his home and was at his home for a few hours on the morning of the planned drug transaction with Alce while Perodin went to get the drugs. Id. at 172-73, 187-88.

The next morning, the district court informed the parties that based on the holding of United States v. Chavis, 429 F.3d 662 (7th Cir. 2005) – stating that prior interactions between an informant and a defendant in a drug conspiracy are frequently inextricably intertwined – it would admit the evidence of the prior drug transactions between Jeanty and Perodin. R6 at 2. The court explained that it

4

would allow the government to present the evidence on re-direct. Id. During the continued cross-examination, Perodin admitted that he had not seen any money in Jeanty's possession in February 2005 on the day of the drug deal with Alce. Id. at 22-23.

During re-direct examination, Perodin testified that he believed Jeanty when Jeanty told him that he had the money for the transaction because Perodin had engaged in previous drug transactions with Jeanty. Id. at 23. Jeanty moved for a mistrial, arguing that he had not received notice of the evidence and had not had adequate time to prepare to rebut it. Id. Moreover, the evidence was more prejudicial than probative. Id. at 23-24. The court reiterated its ruling that the evidence was inextricably intertwined, explaining that Jeanty had opened the door while cross-examining Perodin by bringing up Jeanty's babysitting for Perodin. Id. at 24. Additionally, the evidence rebutted any defense that there was only a buy-sell relationship and not a conspiracy. Therefore, the court denied Jeanty's motion for a mistrial. Id.

Perodin testified that he previously sold cocaine to Jeanty about ten times, a kilogram at a time, starting in 2001. Id. at 27. Perodin stated that he often fronted the cocaine to Jeanty, allowing him to take the cocaine and pay for it later. Id. at 33-34. On re-cross examination, Perodin admitted that he could not recall

5

details about the dates of the prior transactions, although they began in 2001. Id. at 39-40. Later, Jeanty renewed his motion for a mistrial based on the admission of the evidence about the ten drug transactions, which the district court denied, explaining that it was not possible "to give an intelligent account of the crime without mentioning [the prior drug transactions]." Id. at 61-62. Even assuming that Rule 404(b) applied, the court found that notice was sufficient. Id. at 62. The court reiterated that the evidence helped rebut the possibility that there was a buy-sell relationship rather than a conspiracy and that Jeanty had opened the door by bringing up his babysitting for Perodin. Id. at 62-63. The jury found Jeanty guilty on both counts. R1-88. The district court sentenced Jeanty to 120 months of imprisonment. R1-98 at 2. Jeanty filed a notice of appeal. R1-99.

## II. DISCUSSION

On appeal, Jeanty argues that the district court abused its discretion by ruling that the prior drug transactions were inextricably intertwined with the charged crimes. Jeanty maintains that the district court's reference to the evidence being useful to show a conspiracy rather than a buy-sell relationship was factually inapplicable in this case because he was not raising that defense. Jeanty asserts that the government was required to provide notice of intent to use Rule 404(b) evidence regardless of whether the evidence was presented in the case in chief or in

6

rebuttal. Moreover, Jeanty asserts that the government was the first to raise Jeanty's babysitting as an issue.

Jeanty argues that the district court should have granted a mistrial because (1) the government's violation of the Rule 404(b) notice requirement was flagrant, and (2) the timing of the admission of the evidence, immediately after cross-examination, reduced the impact of his cross-examination of Perodin. Jeanty maintains that the evidence improperly invited the jury to convict him based on propensity. Further, he argues that the lack of notice deprived him of a reasonable opportunity to investigate the alleged transactions.

We review admission of prior bad acts evidence for abuse of discretion. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008). We review "a decision not to grant a mistrial for abuse of discretion." United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009). To receive a mistrial, a defendant "must show that his substantial rights are prejudicially affected." Id. (quotation marks omitted).

Evidence of prior bad acts, which include "crimes, wrongs [and] acts," may be admitted only for purposes other than proof of bad character. Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion which allows prior bad acts evidence unless it tends to prove only criminal propensity. United States v. Cohen, 888 F.2d

7

770, 776 (11th Cir. 1998). When evidence of prior bad acts is inextricably intertwined with evidence of the charged crime, however, the prior bad acts are admissible as intrinsic, not extrinsic evidence, and Rule 404(b) does not apply. United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992).

Evidence of criminal activity other than the offense charged is intrinsic to the offense when the evidence is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." Ellisor, 522 F.3d at 1269 (quotation marks and citations omitted). The intertwined evidence is admissible if it tends to explain the context, motive, and set-up of the crime and is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985). If the defendant in a criminal prosecution requests it, the prosecution must provide reasonable notice of the general nature of any prior bad acts evidence it intends to introduce at trial. Fed. R. Evid. 404(b). However, this notice provision does not apply when the prior bad acts are intrinsic to the charged offense. See Fed. R. Evid. 404(b) advisory committee's note to 1991 amendments.

8

In Ellisor, the defendant was charged with mail fraud relating to a scheme to sell tickets for a Christmas show the defendant asserted he was organizing at the Doubletree Hotel. 522 F.3d at 1259-1262. The government presented evidence that the defendant did not pay his room bill at the Doubletree Hotel. Id. at 1269. Although the defendant was not charged with a crime for the non-payment, we explained that the evidence was intrinsic to the mail fraud and admissible. Specifically, "the unpaid bill was a necessary part of the evidence relating to the charged offense" because the unpaid bill corroborated the prosecution theory that Ellisor fraudulently diverted funds he had collected in the form of ticket sales to use for personal expenses rather than on preparations for the show. Id. at 1269-70.

In Williford, the defendant was charged with conspiracy to import and possess marijuana and possession of marijuana with intent to distribute. 764 F.2d at 1496. An informant testified that the defendant was looking to purchase cocaine and that the informant later helped the defendant unload cocaine and marijuana from a truck. Id. at 1496-99. The defendant commented at that time that he was pleased to receive the cocaine and that it was high quality. Id. at 1499. We held that the evidence regarding the cocaine was admissible as inextricably intertwined with the marijuana charges because it (1) established the defendant's desire to obtain cocaine and marijuana outside the conspiracy, and (2) explained the

9

conversations between the defendant and the informant, which included information regarding the uncharged cocaine-related conduct and the charged conduct. Id. We noted that the fact that all of the conduct occurred in the same time period weighed in favor of admission of the evidence. Id. at 1499-1500.

Jeanty's claim that the district court abused its discretion by admitting the prior bad acts evidence is without merit. The evidence showed that Perodin did not see Jeanty with any money on the day of the charged crime, but, he testified that he believed Jeanty's statement that he had the money for the transaction based on their prior history of drug transactions. The district court did not abuse its discretion by determining that the prior transactions were a necessary part of the story to explain (1) the set-up of the crime (e.g., how the conspirators were using the same method as they had in the past), (2) Jeanty's intent to obtain the cocaine and pay for it later, and (3) the trust between the co-conspirators as evidenced by Perodin's agreeing to obtain the cocaine for Jeanty based on Jeanty's representation that he had the money.

In this case, the evidence showed that Perodin trusted Jeanty's assertion that he had the money for the drug transaction in part based on their prior history of drug transactions. Without the evidence of prior transactions between Perodin and Jeanty, the jury had no reason to infer that Perodin's belief that Jeanty had money

10

and intended to participate in the transaction was correct. Even though the prior drug transactions were not contemporaneous with the charged conduct, and the evidence of those transactions might not have been necessary to prove the elements of the offense, the prior transactions were part of the story and explained why Perodin believed Jeanty.

## III. CONCLUSION

Appellant challenges the admission of evidence on appeal. We conclude that the district court did not abuse its discretion by admitting evidence of Jeanty's prior drug convictions because that evidence was necessary to explain the interaction between Jeanty and his co-conspirator Perodin. Accordingly, we **AFFIRM.**